7959

### BRUCE v. CITY COUNCIL OF GREENVILLE.

CONSTITUTIONAL LAW—CITIES AND TOWNS.—Under the provision of the amendment to the Constitution, ratified February, 1905, 24 Stat., 955, permitting the city of Greenville to issue bonds over the constitutional limitation "for improvement of streets and sidewalks," the city may issue bonds to repair or reconstruct a bridge which is a part of a street by making it larger and paving it like the other portion of the street.

16—89

Petition in the original jurisdiction of this Court by J.
B. Bruce to enjoin the City Council of Greenville from issu-
ing bonds.

*Messrs. Haynesworth & Haynesworth,* for petitioner.

*Mr. Oscar Hodges,* contra.

July 8, 1911. The opinion of the Court was deliv-
ered by

MR. JUSTICE WOODS. In this proceeding, instituted to
enjoin the city council of Greenville from issuing certain
municipal bonds, the following are the admitted facts:

The city of Greenville is incorporated under the General
Statutes of this State (Code 1902, vol. I, sec. 1972), having
surrendered its old charter and received a new one, February
14, 1911. By an amendment to the Constitution, proposed
by Joint Resolution February 19, 1904 (24 Stat. 676), and
ratified by an act of February 20, 1905 (24 Stat. 955), it
was provided that the city of Greenville might increase its
bonded indebtedness to an amount not exceeding fifteen per
cent. of the value of its taxable property, where the pro-
ceeds of the bonds are applied to the payment "of past
indebtedness, to expenses and any liabilities incurred or to
be incurred in the improvement of streets and sidewalks,
and for providing sewerage for said city, or any part
thereof, for purchasing, owning or operating waterworks
or electric light plants."

In the early part of the year 1910, a petition from the
freeholders of the city of Greenville was presented to the
city council, asking for an election upon the question as to
whether the city of Greenville should issue bonds in the
sum of two hundred thousand dollars, "to be used solely
for the improvement or paving of its streets and sidewalks
and building Main Street bridge." In this petition it was
stated that $20,000 should be used for building a bridge,

and $180,000 for street improvements.    The election was
duly held and a large majority voted in favor of the issue
of the bonds.    Street improvement bonds to the amount
of $100,000 have already been issued and sold, and out of
the proceeds $20,000, provided for in the petition, has been
expended on Main Street bridge.    The city has now negoti-
ated the sale of the remaining $100,000 worth of bonds,
the proceeds of this second sale to be used in paying for
street paving, a large part of which work has already been
done.    The sale of these bonds has, however, been held up
because the objection was raised that if the city had no
authority to issue bonds for the building of Main Street
bridge, this would enter into and affect the validity of the
entire issue and not merely the validity of the $20,000
worth of bonds, the proceeds of which were actually used
in paying for this bridge.

The only question concerning the validity of the bond
issue is, whether "the building" of Main Street bridge is
"an improvement of streets and sidewalks" within the
meaning of the amendment to the Constitution above
referred to.    The bridge in question spans Reedy River
where it is crossed by Main street.    For many years there
has been a bridge at this point, and before the first bridge
was built there was a ford.    The new bridge is at the same
place, but slightly larger than the old bridge.    The walls
and arches are of re-enforced concrete, filled in with dirt;
on the bridge will be laid asphalt sidewalks and vitrified
brick paving, corresponding in all particulars with the other
portions of Main street.    Unless the bridge can be said to
be a part of the street, so that the building of it would come
within the provision for paving streets and sidewalks, the
city has no authority to issue bonds for that purpose.

If the proceeds of the bond issue had been used or were
to be used for the construction of a river bridge costing
twenty thousand dollars where there had been no bridge
before, the question might be a serious one.    In a very large

sense, the construction of such a bridge might be considered improvement of a street, but it might be argued that such construction should be regarded a distinct municipal enterprise, not intended by the Constitution to fall under the head of a mere street improvement. *Schneider* v. *Detroit* (Mich.), 40 N. W. 329. On this question we express no opinion. But where, as in this case, there is already a bridge over the river constituting a part of the street, it seems to be clear that the improvement of the river crossing by repair or reconstruction of the bridge must be held to be an improvement of the street. 2 Dillon on Mun. Corp., sec. 729; *Berlin Iron Bridge Co.* v. *San Antonio* (Tex.), 50 S. W. 408; *Huggins* v. *Riley* (N. Y.), 25 N. E. 993; *Sandpoint* v. *Doyle* (Idaho), 17 L. R. A. (N. S.) 497; *Erie* v. *Schwingle* (Pa.), 60 Am. Dec. 37; *Chicago* v. *Powers* (Ill.), 89 Am. Dec. 418; *Cascade County* v. *City of Great Falls* (Montana), 46 Pac. 437.

It is the judgment of this Court that the petition be dismissed.