# Richmond

### Fairfax County Taxpayers Alliance, Et Al. v. Board of County Supervisors of Fairfax County, Virginia.

January 16, 1961.

Record No. 5200.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*Marshall A. Martin, Jr.* and *William R. Pierce*, for the appellants.

*Robert C. Fitzgerald, Commonwealth's Attorney* (*Guy O. Farley, Jr., Assistant Commonwealth's Attorney*, on brief), for the appellee.

MILLER, J., delivered the opinion of the court.[1]

On November 3, 1959, at the time of the general election a special referendum election was held pursuant to Title 15, chapter 19.1, 1960 Cum. Supp., Code 1950, which submitted to the qualified voters of Fairfax county a proposal for borrowing money and issuing bonds of Fairfax county in the amount of $4,800,000 "for the acquisition of land in the County and the improvement and equipment thereof for recreational facilities, comprising public parks, playgrounds and recreation centers, including the construction of necessary buildings and structures." The proposal was carried in the election according to the report of the Commissioners of Election.

On December 23, 1959, the County Board of Supervisors filed a motion for judgment under section 15-666.55, 1960 Cum. Supp.,

---

[1] This opinion was prepared by Justice Miller before his death and is adopted as the opinion of the court.

Code 1950[2], against all statutory defendants to declare that the described bonds "when issued will be valid and legal obligations of the County of Fairfax, Virginia."

The Fairfax County Taxpayers Alliance, a voluntary association, and three taxpayers in their individual capacities, hereinafter called defendants, filed a joint answer, grounds of defense, and request for an affirmative reply. They denied the allegation that the bonds "when issued will be valid and legal obligations of the County of Fairfax, Virginia," and alleged that on the basis of the certified report of the Commissioners of Election, the proposition failed to win approval as required by law; that the report was *prima facie* unreliable and unacceptable as the true measure of the sense of the qualified voters of the county on the question; that the ballot used in the election did not conform to the requirements of section 24-141, Code 1950, as amended, and was in violation of section 28 of the Constitution of Virginia, and that the proposition on the ballots was misleading and did not conform to the requirements of the statute because it set forth only the "aggregate" amount of the bonds proposed to be issued. Defendants prayed that the court order and require a recount of all ballots cast in the election on the question and requested the entry of an order declaring the proposed bonds to be invalid.

After an *ore tenus* hearing on March 1, 1960, and consideration of several exhibits offered in evidence by the litigants, the court denied defendants' request for a recount and took under advisement the issues relating to the content and form of the ballots. In an opinion of March 12, 1960, it held that the County Board was entitled to a judgment declaring that the bonds, when issued, would be valid and legal obligations of the County of Fairfax. From the final order

---

[2] "The governing body of any political subdivision proposing to issue bonds may bring at any time a proceeding in any court of the county or city having general jurisdiction and in which such political subdivision is located to establish the validity of such bonds, the legality of all proceedings theretofore taken in connection with the authorization or issuance of such bonds and the validity of the tax or other means provided for the payment of such bonds, and the validity of all pledges of revenues and of all covenants and provisions which constitute a part of the contract between such political subdivision and the holders of such bonds. Such proceeding shall be brought by filing a motion for judgment describing such bonds and the proceedings had relative to the issuance thereof and alleging that such bonds when issued will be valid and legal obligations of the issuing political subdivision. In such motion for judgment the taxpayers, property owners and citizens of the issuing political subdivisions, including non-residents owning property or subject to taxation therein, and all other persons interested in or affected in any way by the issuance of such bonds shall be made parties defendant."

of March 23, 1960, carrying into effect the court's opinion, we granted defendants an appeal.

The several assignments of error relied on by defendants are to the effect that the court erred by holding that (a) defendants were not entitled to a recount, (b) the content of the ballot was not misleading and did not violate the provisions of section 15-714.9, Code 1950, (c) the bond resolution was for one purpose, and (d) the bond issue was not void because the form of the ballot was not in strict compliance with section 24-141, Code 1950, and section 28 of the Constitution.

The pertinent facts are that on July 22, 1959, the County Board held a meeting to consider the recommendation of the County Executive that a General Improvement Bond issue for recreational purposes be undertaken to include the following:

| "Neighborhood and Community Parks and Recreational Areas | $1,000,000 |
| Stream Valleys—Capper-Crampton | 2,000,000 |
| Stream Valleys—Other | 450,000 |
| Belvoir Reservoir | 550,000 |
| | $4,000,000 |
| Regional Parks (Regional Park Authority) | 800,000" |

A motion was approved by majority vote of the County Board that "the items of Community Parks and Regional Parks be combined into one item in the proposed Bond Issue with explanation that $800,000 would be used for Regional Parks, provided the Regional Park project goes through, but if not, then the money would be used for Community Parks." A resolution was also adopted requesting the circuit court to order an election.

A brochure was printed and circulated delineating the item under the "Parks and Recreation" program, i.e., that there would be 75 neighborhood parks of 5 acres each; 10 community parks of 20 acres; 20 miles of Stream Valley Parks with the federal government contributing 1/3 of the cost, and two other items for lesser natural parks in the county.

At the instance of the County Board and upon presentation of a certified copy of the minutes of a meeting of October 7, 1959, requesting the court to order an election upon the bond issue, the court

by order of October 8, 1959, directed that a special election be held at the time of the general election on November 3 of that year.

The complete official ballot as printed and used in the special election submitted six separate propositions to the electors. In addition to the "Parks and Recreation" proposition for $4,800,000, proposals for five other bond issue projects upon which referendums had been ordered appeared on the ballot sheet with separate "For" and "Against" boxes to be marked by voters for each bond issue project.

The ballot for voting on the "Parks and Recreation" proposal follows:

"Shall the Board of County Supervisors of Fairfax County, Va., contract a debt, borrow money and issue bonds of the county in the aggregate principal amount of $4,800,000 for the purpose of providing funds for the acquisition of land in the county for the improvement and equipment thereof for recreational facilities comprising public parks, playgrounds and recreation centers, including the construction of necessary buildings and structures?

☐   FOR the             ☐   AGAINST the
       Bond Issue                Bond Issue"

Appropriately worded ballots and like "For" and "Against" voting provisions and accompanying voting boxes appeared on the official ballot sheet for each of the other five bond issue proposals.

 The returns upon canvass of the election, duly made and reported by the Commissioners of Election upon the Parks and Recreation proposal were 11,965 votes "For" the proposition, and 11,830 votes "Against", with 313 votes reported as "Void." The returns as certified by the Commissioners also show a total of 24,239 "Votes Cast" on the proposition. It thus appears that the aggregate of the "For", "Against" and "Void" votes does not equal, but falls 131 short of, the total "Votes Cast."

Appellants contend that the discrepancy casts doubt upon the accuracy of the returns, and when considered along with the narrow margin by which the proposition was carried, required that the court order a recount.

This apparent discrepancy in the returns was explained at the *ore tenus* trial by the testimony of several election officials who served in precincts where differences of this character appeared in the tabulations. It was shown that these differences resulted from count-

ing as a "vote cast" a ballot which contained no vote on the "Parks and Recreation" bond issue but upon which the voter had balloted on one or more of the *other* bond issue propositions. Such a ballot was not counted as a vote "For", "Against" or "Void", but was counted in the total of "Votes Cast." Typical of the explanation given by several precinct officials is testimony of Katherine Gallo who served at a precinct where the returns of the Election Commissioners showed 360 votes cast:

"Q. * * * Does it show the number of votes cast as being 360?
"A. That is correct.
"Q. Does it show number of void ballots 3?
"A. That is right.
"Q. Does it show votes for the bond issue 176?
"A. Correct.
"Q. And does it show votes against the bond issue 167?
"A. That is correct.
"Q. Would you follow my addition of the votes for the bond issue, votes against the bond issue and the void ballots? Do they total 346?
"A. That is correct."

Of like effect was the testimony of Diana Byrd who served as an official at another precinct at which 760 votes were returned as "votes cast." Excerpts from her testimony follow:

"A. Yes. Every ballot was counted as a vote cast unless there were no issues voted at all.
"Q. Am I correct that if you had added a column or if a column had been provided for blank ballots, and you had put that number in, you would have totaled 760, is that correct?
"A. That is correct."

We need not and do not determine whether the election could be contested or that the court was empowered in this proceeding brought under section 15-666.55, *et seq.*, to order a recount. Even if it be conceded that the court was authorized and empowered to order a recount, the evidence explains the discrepancies appearing on the returns and fails to indicate any necessity for ordering a recount or abuse of discretion by its denial.

■ Appellants also contend that the language of the ballot submitting the question to be voted upon is misleading because it fails to inform a voter of the contemplated use of the funds and the specific projects to which they are to be applied. They assert that

the face of the ballot gives the impression that Fairfax county would purchase the land and provide and administer the recreational facilities, while the evidence shows that the county has entered or may enter into contracts or incur indebtedness without having submitted to the voters the names of the authorities with which conracts have been or may be made, as required by section 15-714.9[3].

. An examination of the minutes of the County Board of Supervisors meeting of July 22, 1959, filed as an exhibit discloses that on motion duly made and carried, the proposed bond issue of $4,000,000 for Community Parks and the proposed issue of $800,000 for Regional Parks (whether the latter item be ultimately applied to Regional Parks or Community Parks) were combined into one item in the proposed bond issue of $4,800,000 as finally adopted for Community and Regional Parks, and it was so tabulated in the minutes.

At this meeting the county executive also advised the board that he would work with other county agencies and authorities in the preparation of a brochure for use in presenting the proposed bond issue to the citizens. Pursuant to this assurance a brochure was prepared and circulated which fully disclosed that it was the county's intention to use the proceeds of the bond issue to acquire land and develop thereon neighborhood, community, stream valley and regional parks of varying sizes in numerous localities for related recreational activities.

Though some additional funds to aid in the acquisition and establishment of some of the recreation areas may ultimately be supplied

[3] "Each county, municipality and other public body is hereby authorized and empowered:

"(a) To convey or lease to any authority created hereunder, with or without consideration, any park upon such terms and conditions as the governing body thereof shall determine to be for the best interests of such county, municipality or other public body:

"(b) To contract with any authority created hereunder for park services; provided, however, that no political subdivision shall enter into any contract with an authority involving payments by such political subdivision to such authority for park services which requires the political subdivision to incur an indebtedness extending beyond any one fiscal year, unless the question of entering into such contract shall first be submitted to the qualified voters of the political subdivision for approval or rejection by a majority vote of such qualified voters voting in an election on such question; provided that nothing herein contained shall prevent any political subdivision from making a voluntary contribution to any authority at any time.

\*     \*     \*     \*     \*

"\* \* \* The question to be submitted to the voters for determination shall include the names of the political subdivision and the authority between whom the contract is proposed; and the nature, duration and cost of such contract. \* \* \*"

by the federal government under the Capper-Crampton Act, Act of July 19, 1952, c. 949, section 1, 66 Stat. 781, 40 U.S.C.A. section 71, yet the evidence fails to disclose that the county has made any contract in violation of section 15-714.9, and it may not be anticipated that it will use the funds derived from the bond issue except as and for the purpose submitted to the voters in the ballot. The trial court's observation in its opinion that if at a later date an attempt be made to otherwise use the funds, "the party aggrieved would have a proper remedy" is sufficient answer to this contention.

The purpose of a referendum of this character is to determine the will of the voters upon the assumption of a public debt to the amount and for the object proposed. It is obvious that the proposition to be voted upon must be stated in the ballot in brief and general terms. The amount of the proposed debt must appear on the ballot, and the general purpose must be stated with sufficient certainty to inform and not mislead the voters as to the object in view, but the details of the proposed work or improvements need not be set out in the ballot.

As printed upon the ballot, the proposition submitted to the voters was to contract a debt, borrow money and issue bonds "in the aggregate principal of $4,800,000 for the purpose of providing funds for the acquisition of land in Fairfax county, Virginia, and improvement thereof for recreational facilities comprising public parks, playgrounds, and recreational centers, including the construction of necessary buildings and structures." It thus appears that the funds to be derived from the bond issue are to be applied to related recreational facilities included in one over all plan to provide community and regional parks. When the minutes of the County Board which enumerate the items and state the ultimate purpose for which the bonds are issued and the question put in the ballot are compared and considered together, they clearly disclose that the related projects upon which the funds will be used constitute but one purpose. This conclusion is amply sustained by the following authorities:

"The test of whether a proposition for issuance of municipal bonds is single, so that it cannot be submitted to the voters in combination with others, is not its ability to stand alone, but whether or not the several parts of a project are so related that, united, they form in fact but one rounded whole." 43 Am. Jur., Public Securities and Obligations, section 91, p. 345.

"Two or more matters may be joined and submitted as one prop-

osition where they are so related and connected with each other as to constitute parts or incidents of one scheme or project." 64 C. J. S., Municipal Corporations, section 1925, p. 539.

"This question turns on whether or not the four purposes for which the bonds are proposed are distinct and unrelated, or on the other hand, fall in the category of those being so related as to be for a single purpose. The law is well settled that if bonds are proposed and issued for two or more purposes that are so related as to amount to a single purpose, they may be combined and voted on as a single issue, otherwise each proposition must be submitted so that it can be voted on separately. * * *" *State* v. *City of Daytona Beach*, 160 Fla. 13, 14, 33 So. 2d 218.

"* * * The scheme had in contemplation the acquisition of several distinct parcels of land, widely separated, to be converted into separate parks for the enjoyment of all the inhabitants of the city. The scheme is a single scheme, the purpose a single purpose * * * . The law does not contemplate, much less compel, that each piece and parcel of land which may be desired for a park should be voted upon separately. * * *" *City of Oakland* v. *Thompson*, 151 Cal. 572, 576, 91 Pac. 387.

Other decisions of like effect are *Clark* v. *City of Los Angeles*, 160 Cal. 317, 116 Pac. 966; *Shull* v. *Texarkana*, 176 Ark. 162, 2 S. W. 2d 18; *Voss* v. *Chicago Park District*, 392 Ill. 429, 64 N. E. 2d 731.

Defendants' next contention is that the court erred in holding that the bond issue was not voided because the form of the ballot was not in strict compliance with section 24-141, Code 1950, and section 28 of the Constitution of Virginia.

Section 24-141 which directs how special elections shall be held and designates the form of the ballot provides that "All such elections shall be held and conducted in the manner prescribed by law for other elections, provided, however, that the ballots for use at any such election shall be printed to read as follows:

" 'Questions (here state briefly the question or proposition submitted to the electors.)

☐ For

☐ Against' "

Defendants insist that this bond issue should be voided because the "For" and "Against" boxes and accompanying words appear in horizontal positions on the ballot and not above and below each other. The word "questions" as used in section 24-141 does not appear on the ballot, and the words "For the Bond Issue" and "Against the Bond Issue" are used on the ballot instead of merely the words "For" and "Against" as designated in the statute, but defendants do not complain of this slight departure for the form of the ballot.

We need not decide whether, standing alone, these provisions of section 24-141 as to the wording and form of the ballot are mandatory and must be literally complied with because section 15-666.62 must be read in conjunction with section 24-141 in solving the problem. Section 15-666.62 reads as follows:

"No court in which a proceeding to invalidate or sustain bonds is brought shall invalidate the bonds unless it finds substantial defects, material errors and omissions in the incidents of such bond issue. Matters of form shall be disregarded."

The language of this section, aided as it is by section 15-666.54, is explicit, mandatory and controlling. This proceeding is clearly one to sustain the bonds in question, and the form and content of the ballot is an incident of the bond issue. Certainly the variance in the ballot used from that prescribed by section 24-141 is a matter of form and not of substance and does not invalidate the bond issue. *County Board of Warren County* v. *Miller*, 164 Va. 334, 180 S. E. 286.

Section 28 of the Constitution provides that "All ballots shall contain the names of the candidates in clear print and in due and orderly succession" and does not undertake to prescribe the form of the ballot in referendum elections of this character; that is the province of the legislature. It is therefore sufficient to say that the requirements of section 28 were not applicable to the ballots used in this election.

The order appealed from will be affirmed.

*Affirmed.*