19072

David H. SADLER, Individually and representing the taxpayers of the City of Rock Hill, South Carolina, Appellant, v. David LYLE, as Mayor, and C. A. Barron, Coleman G. Poag, A. B. Poe, and C. A. Reese, Jr., as members of the City Council of Rock Hill, South Carolina, Daniel R. McLeod, as Attorney General of the State of South Carolina, and City of Rock Hill, South Carolina, a municipal corporation, Respondents.

(176 S. E. (2d) 290)

*George A. Gill, Jr., Esq.,* of Rock Hill, *for Appellant,*

*Messrs. Spencer & Spencer,* of Rock Hill, and *Sinkler, Gibbs & Simons,* of Charleston, *for Respondents, Mayor, members of City Council,* and *the City of Rock Hill,* and *M. J. Bowen, Jr., Assistant Attorney General,* of Columbia, *for Respondent, Daniel R. McLeod, as Attorney General,*

*George A. Gill, Jr., Esq.,* of Rock Hill, *for Appellant, in Reply,*

August 21, 1970.

## ORDER

Upon a consideration of the petitions for rehearing filed by both parties, it is ordered that the petitions be denied. The *per curiam* order of affirmance is withdrawn and the following opinion substituted in lieu thereof.

## OPINION

LITTLEJOHN, Justice:

The circuit court has declared a Rock Hill municipal bond election valid and has ruled that the city may issue $3,250,000 in bonds. Plaintiff has appealed and raised five questions.

The plaintiff, individually and as a representative of all taxpayers of the city, brought this action to enjoin the issuance of all general obligation bonds approved at the election.

The defendants are the Mayor and members of the City Council, the Attorney General of South Carolina, and the city of Rock Hill, a municipal corporation. Evidence was submitted and the matter heard on its merits by the Honorable Robert W. Hayes, circuit judge, who decreed that the city could proceed to issue bonds.

The election involved was held in the city of Rock Hill on May 29, 1969 pursuant to the provisions of the Municipal Bond Act (Sections 47-831 to 47-860, inclusive, Code of Laws of South Carolina, 1962). There was submitted to the voters (1) the question of issuing not exceeding $2,700,000 of bonds whose proceeds shall be used to pay the cost of constructing "street improvements in and about the business area of the city of Rock Hill," and (2) the question of issuing not exceeding $300,000 general obligation bonds to acquire additional fire protection facilities, and (3) not exceeding $250,000 general obligation bonds for additional parks and playground facilities.

The election resulted favorably on all questions presented. The vote in favor of street improvement bonds was 1,185 in favor to 1,087 against. The resolution of city council declaring the favorable results of the election was filed in the office of the Clerk of Court in York County on June 10, 1969 pursuant to the provisions of Section 47-842 of the code.

Article II, Section 13 of the constitution relating to special elections for bonding municipalities provides that "all electors of such city or town who are duly qualified for voting under Section 12 of this Article, and who have paid all taxes, State, County and Municipal for the previous year, shall be allowed to vote;". This court has held that persons who own no property, and accordingly paid no tax, were eligible to vote, and that persons who owned property were

required to exhibit their tax receipts for the previous year as a prerequisite to voting. *Moffett v. Traxler*, 247 S. C. 298, 147 S. E. (2d) 255 (1966).

The constitution restricts municipalities generally to an 8% debt limitation. However, this limitation does not apply to the City of Rock Hill where the proceeds are applied exclusively (*inter alia*) "to the purchase, erection, improvement and maintenance of streets, sidewalks, * * *." The exception to the general provisions relating to Rock Hill is by virtue of an amendment to Article VIII, Section 7 and Article X, Section 5 of the constitution as set forth on page 181 of Volume 16 of the South Carolina Code for 1962. This constitutional amendment on which the City of Rock Hill must rely in order to issue the proposed street improvement bonds without violating the 8% limitation generally applicable, was submitted to the voters of South Carolina at the 1918 general election in the form of a single question which related to "exempting Rock Hill and Florence from the foregoing provisions relating to municipal bonded indebtedness * * *."

There is no dispute as to the material facts involved which will be outlined.

The main north-south line of the Southern Railway Company (Southern) running between Charlotte, North Carolina, and Columbia, cuts through the center of the main business district of the City of Rock Hill. At that point they intersect with east-west railroad tracks connecting York and Lancaster which also serve industries in the vicinity of Rock Hill. In recent years two circumstances have produced a serious traffic problem in the Rock Hill business district: (1) the amount of vehicular traffic flowing through the business district has increased and, (2) as a result of new industries in and about Rock Hill, the use of the east-west railroad tracks has increased. When freight trains are switched from the main north-south line to the east-west line in order to serve the industries many of the main streets

in the business area are blocked for considerable periods of time and much traffic congestion results.

Rock Hill and Southern have had extended negotiations attempting to eliminate this traffic problem. The resulting agreement dated August 16, 1968, contemplates a project recommended by the consulting engineers employed by the city and includes the relocation of railroad tracks, the construction and remodeling of railroad bridges, the construction of underpasses and the construction of a new railroad freight depot. Under this agreement, when the project is completed all of the properties necessary to sustain the railroad operation, including the relocated tracks, the new freight depot and new rights-of-way for railroad purposes will be conveyed to Southern, and all other project properties, including the residual properties and rights-of-way now owned by Southern but no longer required for its operation will become the property of the city. The city and Southern concluded that the overall effect of the "swap" of properties will benefit the city to the extent of $380,000. Southern had agreed to contribute $250,000 toward the cost of the project. Thus, the city will reimburse Southern for the balance by a cash payment of $130,000.

This aspect of the project is estimated to cost $2,500,000 and is only one part of an overall street improvement program proposed by Rock Hill at an estimated total cost of $7,554,000, to be funded by Federal, State and local money. After reaching the agreement with Southern, the city then entered into an agreement with the State Highway Department dated September 22, 1969, covering the entire street improvement program and a separate engineering agreement relating to the necessary design and engineering work. The city's share of the cost of the total program is $2,700,000.

The appellant first contends that the constitutional amendment exempting Rock Hill from the 8% constitutional debt limit was not properly submitted to the people and approved and is not now a part of the

constitution because the *one* question submitted exempted both Rock Hill and Florence. Article XVI, Section 2 of the constitution as relates to proposed amendments provides:

"If two, or more amendments shall be submitted at the same time, they shall be submitted in such manner that the elector shall vote for or against each of such amendments separately."

Although constitutional amendments relaxing debt limitations which relate to more than one city and which also relate to more than one purpose in a single amendment have been before this court previously, this is apparently the first occasion that the question here raised by appellant has been expressly presented. This particular amendment was litigated in the case of *Lucas v. Barringer,* 120 S. C. 68, 112 S. E. 746 (1922), but there was no contention there that the amendment was adopted in violation of Article XVI, Section 2. Another amendment which undertook to relax the debt limitation of more than one political subdivision was unsuccessfully attacked in the case of *Stevenson v. Carrison,* 122 S. C. 212, 115 S. E. 251 (1922), and although the form of the question submitted to the voters was set forth in the court's opinion, there was no question raised that it violated Section 2, Article XVI, of the South Carolina Constitution. An amendment to Article VIII, Section 7 and Article X, Section 5 relaxing the debt limitation of the Town of Dillon when bonds are issued for water, sewer or lighting purposes was attacked in the case of *Bethea v. The Town of Dillon,* 91 S. C. 413, 74 S. E. 983 (1912), on the grounds that it violated Section 2 of Article XVI because it undertook to amend both Section 7 of Article VIII and Section 5 of Article X of the South Carolina Constitution and therefore should have been submitted as two separate questions. However, no, issue was made that each purpose for which the debt limitation was to be relaxed should have likewise been submitted as a separate question and the court in sustaining the amendment stated that "there was really only one amend-

ment submitted and that had reference to only one subject—the limitation upon the bonded debt of a municipal corporation."

The court has, therefore, consistently treated the question at issue here as one dealing solely with the subject matter of debt limitations rather than two independent questions, one relating to relaxing the debt limit of one political entity, and the other relating to relaxing the debt limit of another political entity.

An examination of the many amendments relaxing debt limitations proposed and ratified since the constitution was adopted in 1895 establishes a similar legislative interpretation that the submission of a constitutional amendment relaxing the debt limit of several municipalities for several purposes by a single question does not violate the provisions of Article XVI, Section 2. Of course, the legislative construction is not necessarily controlling, but "there is a strong presumption that it is correct and should be adopted by the court." *Gebhardt v. McGinty,* 243 S. C. 495, 134 S. E. (2d) 749 (1964).

We, therefore, hold that the manner of submitting this amendment did not violate Article XVI, Section 2. Accordingly, the special amendment relaxing the debt limitation of the City of Rock Hill for the purposes specified therein is valid.

The appellant secondly contends that the project contemplated by the agreement between the city and Southern does not come within the meaning of the language of the special constitutional amendment removing the debt limitation in the case of bonds whose proceeds are used for the "purchase, erection, improvement and maintenance of streets and sidewalks * * *" inasmuch as the project includes several items such as relocation of railroad tracks, the construction of railroad buildings, the construction of overhead bridges and underpasses and off-street parking.

Because of the location of the railroad tracks of Southern dividing the business area of the City of Rock Hill into four sections, the solution to the city's traffic problem necessarily involves those items of construction which plaintiff contends are not within the meaning of the constitutional amendment and in order to utilize the existing and proposed streets to their best advantage, the city also proposes to finance the construction of off-street parking facilities. The relationship of these items to a street improvement program is discussed in the testimony of Mr. Ralph Whitehead, an engineer who specializes in the design of railway bridges, highway bridges, highways and railways, as follows:

"* * * Of course, you cannot say that each specific and minute item of work in and of itself constitutes a street improvement. On the other hand, each item of work is necessary to and constitutes a part of the overall street improvement program which has been developed by the City after considerable professional study and investigation * * *. It certainly represents a vast improvement to any street to free it of a grade level railroad crossing with resultant elimination of traffic congestion by blocked crossings and with resultant elimination of danger to human life which always exists wherever grade crossings are maintained. To summarize generally on the question of what may be considered a street improvement, I point out that the primary function of a street is to provide for the rapid, smooth, uninterrupted flow of vehicular traffic. On street parking, railroad crossing of a grade, street intersections at grade, abrupt changes in street alignment or profile grade, restricted horizontal or vertical clearance, intersections with obstructed sight distances, inadequate drainage—all these and others, interfere with the primary function, thereby reducing the overall efficiency of the street."

In the case of *Bruce v. City of Greenville*, 89 S. C. 241, 71 S. E. 817 (1911), this court held that a special constitutional amendment relaxing the debt limitation in the case

of bonds issued by the City of Greenville for the "improvements of streets and sidewalks * * *" included bonds whose proceeds would be applied to construct a bridge by which Main Street would span the Reedy River at a point where a bridge had been previously constructed. Although in the *Bruce* decision the court stressed the fact that the bridge would be a replacement, the court nevertheless recognized that "in a very large sense, the construction of such a bridge might be considered the improvement of a street; * * *" In the case of *Marshall v. Rose,* 213 S. C. 428, 49 S. E. (2d) 720 (1948), the court interpreted a special constitutional amendment relaxing the debt limitation in the case of bonds issued for "the building, erecting, establishing and repairing, extending or maintaining of sidewalks, streets * * *" so as to include storm sewers inasmuch as storm sewers have a definite function in the maintenance of streets.

In interpreting constitutional amendments relaxing debt limitations the court has consistently given a broad interpretation to the language used in order to effect the legislative intent. *Knight v. Allen,* 234 S. C. 559, 109 S. E. (2d) 585 (1959). In the case of *Knight v. Hollings,* 242 S. C. 1, 129 S. E. (2d) 746 (1963), the court stated "* * * a constitutional provision of doubtful import is not to be viewed solely in the light of conditions existing at the time of its adoption, being intended not to obstruct the progress of the state but rather to meet and to be applied to new conditions and circumstances as they may arise * * *" The latter decision dealt with a constitutional amendment which did not involve any debt limitations, but in the case of *McKenzie v. McLeod,* 251 S. C. 226, 161 S. E. (2d) 659 (1968), the court, in giving a liberal interpretation to several constitutional amendments providing for the relaxation of debt limitations adopted the principle, and cited the above quoted language, contained in the *Knight* decision. In *Doran v. Robertson,* 203 S. C. 434, 27 S. E. (2d) 714, (1943), the court gave a narrow construction of the original language of Article X, Section 6 of the South Carolina Constitution, holding that

the language "ordinary County purposes" is limited to those items which would have been included within its meaning in 1895. However, in the instant case, we are dealing with a special constitutional amendment of the type which traditionally has been given a liberal construction by this court.

We hold that the proposed $2,700,000 street improvement bonds whose proceeds will be used to implement the overall street improvements of the City of Rock Hill and including the project contemplated in the agreement between the city and Southern come within the special constitutional amendment removing any debt limitation in the instance of bonds issued by the City of Rock Hill for the "purchase, erection, improvement and maintenance of streets, sidewalks * * *."

Appellant thirdly contends that the question submitted to the Rock Hill voters of issuing not exceeding $2,700,000 bonds whose proceeds shall be used to pay the cost of constructing "street improvements in and about the business area of the City of Rock Hill" did not adequately express the purposes for which the bond proceeds are intended. There is no merit in this contention and the question was adequate to authorize the issuance of bonds for the purposes intended inasmuch as the amount of the proposed debt appeared on the ballot and the general purpose for which the bond proceeds would be used was stated with sufficient certainty to inform and not mislead the voters as to the object in view. The details of the proposed work or improvements need not be set out on the ballot. *Fairfax County Taxpayers Alliance v. Board of County Supervisors of Fairfax County*, 202 Va. 462, 117 S. E. (2d) 753 (1961); McQuillin Mun. Corp. (3rd Ed.) Section 48.08; *Ramsey v. Cameron*, 245 S. C. 189, 139 S. E. (2d) 765 (1965).

The appellant fourthly contends that the agreement between the city and Southern is invalid because (a) the city has no authority to enter into the agreement

and (b) because it will benefit a private corporation through the expenditure of public tax revenues; and that therefore the city cannot issue bonds to implement the agreement. By virtue of its Charter (Act No. 279 of 1892, 21 St. at Large, p. 369, as amended) and the general law authorizing cities to lay out, open, close up, widen or otherwise alter streets as may be necessary for the improvement or convenience of the city (Section 47-1327, South Carolina Code of Laws, 1962), the city of Rock Hill is vested with authority to enter into and implement its agreement with Southern, including those provisions which provide for the transfer of property owned by the city to Southern (Section 47-68, South Carolina Code of Laws, 1962). The fact that property acquired with public funds will by virtue of the agreement pass to the ownership of a private corporation and that the proposed transaction involves an exchange of property between the city and Southern does not exceed the authority of the city nor violate any public policy. *Green v. City of Rock Hill,* 149 S. C. 234, 147 S. E. 346 (1929) ; *Carter v. City of Greenville,* 175 S. C. 130, 178 S. E. 508 (1935).

The purpose to be accomplished by the agreement is essentially public, viz: the elimination of a serious traffic problem in the City of Rock Hill which can be corrected only by the relocation of the railroad tracks owned by Southern. The agreement between the city and Southern constitutes the city's choice of means and methods to discharge its obligation to alleviate the traffic problem within the discretion conferred by the city's Charter and the Statute law, and it cannot be held as a matter of law that by this choice of methods the city has transcended the limits of reasonableness or failed to act in good faith. *Green v. City of Rock Hill, supra.* Admittedly, Southern will acquire valuable properties as a result of the agreement, but the city has concluded that it will receive adequate consideration in the form of the properties which will be transferred to the city. In addition, the city is also mindful of the benefits which will result to the overall welfare of the citizens through improved traffic

conditions and this constitutes a valid element of considera-
tion. *Babb v. Green,* 222 S. C. 534, 73 S. E. (2d) 699
(1952).

The fifth question for consideration by the court
■ below and this court on appeal, results from the
observance by the election officials of the require-
ments of Section 13 of Article II, of the Constitution and
Section 47-840 of our Code. These provisions require that,
when general obligation bonds are being voted upon in any
municipality of the state, suffrage be confined to those who
were not delinquent in the payment of taxes charged against
them. In other words, suffrage was permitted to electors
who had no tax liability and to those who had discharged
their tax liability. However, persons who were liable for
taxes but had not paid them prior to voting were denied
suffrage. In this case, the election was held on May 29, 1969.
Its favorable results were declared by resolution adopted by
the City Council of Rock Hill on June 9, 1969, which, in
accordance with the provisions of Section 47-842 of the code,
filed a certified copy of that resolution in the Office of the
Clerk of Court for York County, on June 10, 1969.

Section 47-842 of the code provides that if such is done,
any action challenging the validity of the election must be
instituted within thirty days of the filing of a certified copy
of the resolution declaring the result of the election. This
action was commenced on the 6th day of September, 1969,
or some 58 days after the running of the statute.

Both in the proceedings below and on appeal, the respond-
ents contended that the 30 days statute of limitations became
operative and that the challenge made by the appellant came
too late. In its decision below, the court saw fit to ignore
this contention and decided merely that the challenged con-
stitutional and statutory provisions were valid, notwithstand-
ing prior decisions of the United States Supreme Court
holding that certain limitations upon suffrage constituted a
denial of due process and the equal protection of the laws

granted by the 14th Amendment to the United States Constitution.

On June 23, 1970 (after the order here on appeal) the United States Supreme Court, in the case of *City of Phoenix, Arizona, et al. v. Kolodziejski,* 399 U. S. 204, 90 S. Ct. 1990, 26 L. Ed. (2d) 523, decided that a bond election held in the City of Phoenix, at which suffrage was denied all those who were not property owners, constituted denial of due process and equal protection and invalidated the election.

The provisions of the Arizona Constitution differ from the provisions of the South Carolina Constitution and Statute. Under the Arizona provision only those who owned property were permitted to vote. As we have already pointed out, in South Carolina suffrage does not depend upon ownership of property, but is denied merely to those who have tax liability which has not been discharged at the time of voting.

In stating its reasons for striking the Arizona provision, the United States Supreme Court reasoned, *inter alia,* that tenants as well as landlords were equally interested in the outcome of a bond election, since the resulting burden of taxation would undoubtedly be reflected in the rental payments charged to tenants. It can be similarly reasoned that the elector who is delinquent in the payment of his taxes might be even more interested in eliminating a further tax burden, than is the taxpayer who is financially able to discharge his tax liability.

Even if Article II, Section 13, South Carolina Constitution, be regarded as a denial to delinquent taxpayers of voting rights guaranteed to them by the Fourteenth Amendment to the United States Constitution, it does not follow that we should overrule the decision of Judge Hayes. The United States Supreme Court was careful to limit the applicability of its decision to instances where "In the case of States authorizing challenges to bond elections within a definite period, [our Section 47-842] all elections held prior to the date of this decision will not be affected by this

decision unless a challenge on the grounds sustained by this decision has been or is brought within the period specified by state law."

In this case the appellant did not institute his action within the statutory period permitted, consequently he was not entitled under our decisions, *Morgan v. Feagin,* 230 S. C. 315, 95 S. E. (2d) 621 (1956), and under the *Kolodziejski* case, to raise the question in this case. The respondents asserted this ground on circuit, and again on appeal as a ground for sustaining the effectiveness of the election and its immunity from challenge.

The ruling of this court is that the appellant is barred, both by the language of the *Kolodziejski* case and by our own statute of limitations from raising any challenge to the validity of this election.

It follows that for the reasons stated the judgment below be and it is hereby,

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.