17692

SOUTHERN RAILWAY COMPANY, Petitioner-Respondent, v. SOUTH CAROLINA STATE HIGHWAY DEPARTMENT, C. R. McMillan, as Chief Highway Commissioner, and S. R. Pearman, as State Highway Engineer, Respondents-Appellants.

(115 S. E. (2d) 685)

*Messrs. Daniel R. McLeod, Attorney General,* and *Fulmer & Barnes,* of Columbia, *for Appellants,*

*Messrs. Frank G. Tompkins, Jr.,* and *Robert J. Thomas,* of Columbia, *for Respondent,*

August 3, 1960.

Per curiam.

This action was commenced by Southern Railway Company, the petitioner herein, in the original jurisdiction of this Court, pursuant to Section 58-835 of the 1952 Code of Laws of South Carolina. The action is in the nature of an appeal from a decision of the South Carolina State Highway Department, appellant herein, determining that the petitioner should contribute to the cost of the reconstruction of a highway bridge near the corporate limits of the Town of York, South Carolina. The State Highway Department purported to act pursuant to Sections 58-831 *et seq.,* of the 1952 Code of Laws, in assessing forty per cent of the cost of reconstructing such bridge, which spanned a cut in which lay the tracks of the Railway Company.

This cause was referred to Honorable Edward W. Mullins, as Special Referee, for the purpose of taking the testimony and reporting to this Court his findings of fact and conclusions of law.

It appears from the record that the Special Referee convened a hearing for the purpose of taking the testimony. At such hearing, the parties submitted a stipulation of the facts. The Special Referee, in a report dated February 27, 1960, recommended that the relief sought by the Southern Railway Company be granted. The State Highway Department filed timely exceptions to such report, and sustaining grounds were also submitted by the Southern Railway Company.

The case came on to be heard before this Court upon the issues made by the exceptions filed by the South Carolina State Highway Department.

The report of the Special Referee has been carefully considered in the light of the record and the exceptions. We have concluded that the issues presented by the exceptions were correctly decided by the said Special Referee. The exceptions are overruled and the report of the Special Referee is adopted as the judgment of this Court. Let it be reported.

The report of Special Referee Mullins follows:

This action was commenced by Southern Railway Company in the Supreme Court in its original jusisdiction pursuant to Section 58-835, Code of Laws of South Carolina, 1952, and is in nature an appeal from a decision of the State Highway Department determining that Southern Railway Company should contribute to the cost of reconstructing a highway bridge in York County. The matter was referred to me by an Order of the Chief Justice dated June 12, 1957, for the purpose of taking the testimony and reporting to the Court my findings of fact and conclusions of law. It subsequently developed that the parties were able to stipulate the facts, and they are not now in dispute.

To understand the issues in the case, it is necessary to review briefly the history and nature of the bridge in question. In 1927 and 1928, the Highway Department relocated U. S. Highway No. 321 to straighten an undesirable curve and eliminate the necessity of crossing at grade a track of the Carolina and Northwestern Railway Company at two points. The relocated highway crossed a cut in which lay a track of the Southern Railway Company, and the original bridge (the predecessor of the bridge in question) was built to span that cut.

On August 5, 1955, the Highway Department served notice on Southern Railway Company that it had determined that it had become necessary to reconstruct the said bridge. The notice was stated to be given pursuant to Sections 58-831 *et seq.*, Code of Laws of South Carolina, 1952. It further recited:

"The necessity for the reconstruction of the existing structure arises by reason of the fact that the said existing struc-

ture is inadequate for traffic on Highway No. 321. The existing structure, built in 1928, is constructed of creosoted timbers and structural steel and has a twenty-two foot roadway. Timbers of the said bridge have deteriorated, and present traffic needs require a minimum roadway of thirty feet. Existing structure was designed to carry a load of H 10, and deterioration has lowered this capacity to H8, and present needs require a structure with a capacity of H20-S16. Vehicular traffic over said bridge has increased since its construction. A twenty-four hour count by this Department in 1954 showed passage of 1,664 vehicles and in 1941, a passage of 850 vehicles."

On August 19, 1955, Southern Railway Company by letter acknowledged receipt of said notice, but said:

"Southern Railway Company does not feel obligated to participate in this project as it did not contribute to the original construction or maintenance of the bridge and has derived no benefits therefrom, nor would Southern Railway Company derive any benefits from the rebuilding of this bridge."

On August 23, 1955, the Highway Department served its second notice on Southern Railway Company, reciting:

"Please Take Notice that the South Carolina State Highway Department has determined the cost of effecting the reconstruction of a grade separation structure hereinafter more particularly described, in the amount of Forty-six Thousand ($46,000.00) Dollars, and that, pursuant to the provisions of Section 58-833, 1952 Code of Laws of South Carolina, the portion of such cost to be borne by The Southern Railway Company is the sum of 40% thereof, to wit Eighteen Thousand, Four Hundred ($18,400.00) Dollars."

It is from the latter notice that Southern Railway Company perfected this appeal.

It is stipulated by the parties:

"1. That the track of the Southern Railway Company at the point of the York bridge and for a distance of at

least 1,000 feet on each side of the bridge, has been, since 1916, when the railroad was originally constructed, in a cut of a depth of approximately 20 feet and of a width necessary to accommodate the railroad track.

"2. That, at the point in question, the track of the Southern Railway Company never crossed any higher at grade and that, because of the physical characteristics of the situs in question, a grade crossing would not be feasible or practical.

"* * * The relocation of the highway in 1927-1928 did not eliminate any Southern Railway Company grade crossings in the immediate vicinity."

I have not recited all of the facts that were stipulated but only those that are material to the issues involved.

To place the issues in proper perspective, reference should be made to the fundamental principle that the Highway Department is a statutory creature of the State (Section 3321, Code of Laws of South Carolina, 1952) deriving its powers from the Legislature. It has no inherent power. Whatever power it attempts to exercise must be found in some Act. *Martin v. Saye,* 147 S. C. 433, 145 S. E. 186. This principle seems to have been properly recognized by the Highway Department throughout these proceedings as it has repeatedly made reference to Sections 58-831 *et seq.,* Code of Laws of South Carolina, 1952, as the source of its asserted authority.

The statutory source of power on which the Highway Department relies is Article 11 of Chapter 10, Title 58, Code of Laws of South Carolina, 1952, entitled "Alteration of Grade Separation Structures." Section 58-833 provides a scheme for the apportionment of costs between the Highway Department and the affected railroad of reconstructing, changing or altering a "grade separation structure and its approaches." Section 58-834 reads:

"This article shall apply to all cases where grade separation structures on State highways across railroads are, in

the 'judgment of the State Highway Department, for any reason inadequate for the traffic on the highway, but shall not apply to grade crossings. This article shall not be construed as relieving any railroad company from any obligation or duty now borne by or resting upon such company in connection with any grade separation structure."

Is the bridge in question a "grade separation structure"? The question has been argued fully by both sides, orally and by brief. After careful study and reflection, I am persuaded that this bridge is not such a structure. The term "grade separation" was presumably used advisedly by the Legislature to describe a structure having a particular function; that is, to separate the level of a road from the level of a railroad track at a point where such road and track cross. This was not the function of the bridge in question. There are many reasons why a bridge may be built, and one such purpose might be in some instances the elimination or prevention of a highway-railroad grade crossing. This was not the purpose here. The York bridge was built to span a cut and was no different from a bridge built to span any type of depressed area. True, there was a railroad track in the cut, but it was the latter and not the former that created a need for the bridge.

The foregoing conclusion is strengthened when consideration is had of the principle that these statutes, being in derogation of the common law must be strictly construed. *Powell v. Greenwood County,* 189 S. C. 463, 1 S. E. (2d) 624; *Purdy v. Moise,* 223 S. C. 298, 75 S. E. (2d) 605.

It is, of course, proper in considering the meaning of Article 11 to consider also other statutory provisions relating to the same subject-matter. *Dantzler v. Callison,* 230 S. C. 75, 94 S. E. (2d) 177, appeal dismissed 352 U. S. 939, 77 S. Ct. 263, 1 L. Ed. (2d) 235; *Abell v. Bell,* 229 S. C. 1, 91 S. E. (2d) 538; *Edwards v. State Educational Finance Commission,* 222 S. C. 433, 73

S. E. (2d) 456; *Arkwright Mills v. Murph,* 219 S. C. 438, 65 S. E. (2d) 665; *Spartanburg County v. Arthur,* 180 S. C. 81, 185 S. E. 486; *Temple v. McKay,* 172 S. C. 305, 174 S. E. 23; *Fishburne v. Fishburne,* 171 S. C. 408, 172 S. E. 426; *Gregg Dyeing Co. v. Query,* 166 S. C. 117, 164 S. E. 588, affirmed 286 U. S. 472, 52 S. Ct. 631, 76 L. Ed. 1232, 84 A. L. R. 831; *Winn v. Harby,* 166 S. C. 99, 164 S. E. 434; *Tallevast v. Kaminski,* 146 S. C. 225, 143 S. E. 796.

Perhaps the clearest statement of that principle is contained in *Gregg Dyeing Co. v. Query, supra,* 166 S. C. at pages 123-124, 164 S. E. at page 590:

"It is a settled rule of statutory construction that it is the duty of the court to ascertain the intent of the Legislature and give it effect so far as possible within constitutional limitations. When a statute is a part of other legislation, designed as a whole to establish an expressed state policy, the court should strive to effectuate that policy. To aid in its construction, the statute must be read in the light of cognate legislation. *Tallevast v. Kaminski,* 146 S. C. 225, 143 S. E. 796. And, in construing statutes on the same subject, 'they shall be taken together, and construed *in pari materia;* even though there be no express reference by the latter statute to the former.' *State v. Fields,* 2 Bailey 554, 25 R. C. L., p. 1060. See, also, *Columbia Gaslight Co. v. Mobley,* 139 S. C. 113, 137 S. E. 211.

" 'The rule that statutes *in pari materia* should be construed together applies with peculiar force to statutes that are contemporaneous.' 25 R. C. L., 1062.

"This Court has said: 'There is no rule better supported by justice and wisdom than that, when there are several acts on the same subject, they should be read together as *one act,* so far as their provisions are consistent; as by this means, the mischief, the remedy, and the intention, of the legislature, are more distinctly seen and applied.' (Italics ours.) *Richards v. McDaniel,* 2 Mill Const. 18.

"While, as a general rule, reference to statutes *in pari materia* for purposes of construction has been made largely where there is *ambiguity* in the language of the statute construed, yet this principle has not been limited solely to such instances.

" 'Statutes *in pari materia* must be construed together and given a construction, if possible, which violates no constitutional provision' (Syllabus). *Neil v. Independent Realty Co.*, 317 Mo. 1235, 298 S. W. 363, 70 A. L. R. 550.

"Again: 'These two acts are cognate parts of a single purpose—the liquidation and retirement of designated road and bridge bonds—in the accomplishment of which purpose the provisions of the two acts are inextricably interrelated. They should therefore be construed *in pari materia* as one enactment.' (Italics ours.) *Amos v. Mathews*, 99 Fla. 1, 126 So. 308, 313."

The term "grade separation structure" is used not only in Article 11 but in several instances in Article 10 of the same Chapter entitled "Elimination of Grade Crossings at Instances of Others Than Commission." Article 10 deals with the original construction of a "grade separation structure" whereas Article 11 deals with the reconstruction, change or alteration of such a structure. Section 58-813 of Article 10 speaks of "* * * the elimination of any grade crossing by means of a grade separation structure * * *." Section 58-815 of Article 10 applies to the material to be used in the construction of "the grade separation structure." Section 58-816 of Article 10 provides a scheme for the division of the costs "of the elimination of the grade crossings by means of grade separation structures." Section 58-820 of Article 10 requires that the Highway Department's share of the cost be appropriated or arranged for before the railroad can be required to proceed with the construction "of such grade separation structure." Section 58-821 allows an appeal by the railroad from an order of the Highway Department requiring it to provide "a grade separation structure." Section 58-823 of Article 10 authorizes the Highway Depart-

ment during the appeal to proceed at its own risk with the construction of the "grade crossing separation structure." And Section 58-824 of Article 10 provides that grade crossings replaced by "grade separation structures" and no longer used by the general public may be continued only as private crossings.

Article 10 was enacted by the Legislature in 1924. Article 11 was enacted in 1932. When the two Articles are considered together, it is manifest that in enacting Article 11 the Legislature used "grade separation structure" as a term with an established meaning.

There are three reported cases in South Carolina construing the analagous sections of Article 10 which throw much light on the type of structures intended to be covered by that Article. The first of these cases was *State ex rel. State Highway Department v. Piedmont & N. Ry. Co.*, 186 S. C. 49, 194 S. E. 631, involving an action brought by the State Highway Department to recover part of the construction cost of a bridge over the railroad's tracks. The action involved Section 8438, Code of Laws of South Carolina, 1932. (Sections 58-813 and 58-814 of the 1952 Code.) The latter provide:

"§ 58-813. Notice to railroad and effort to agree on plans.

"Whenever any such subdivision or department of the State government as is mentioned in § 58-812, having jurisdiction, may determine upon the elimination of any grade crossing by means of a grade separation structure, prompt notice shall be given to the railroad company owning or operating the railroad involved. Within ten days thereafter the representatives of the department and of the railroad involved shall meet and adopt a layout, with the grades and alignments mutually satisfactory." (Emphasis added.)

"§ 58-814. Procedure when agreement not reached.

"Failing to agree, the department or subdivision may order the railroad involved to proceed with the construction of such a structure as it may require as indicated in plans

and specifications accompanying its order. The railroad shall begin work thereon within sixty days after receipt of such order and shall complete the structure within a reasonable time."

An order of nonsuit against the Highway Department was affirmed upon the grounds, first, that the Statute of Limitations had run on the action, and second, that the cited statutory sections do not apply where no grade crossing is eliminated. On the latter point, the Court said:

"* * * (U)nder the facts of this case, as disclosed by the record, the statute under which plaintiff seeks to hold defendant liable for a share of the cost of constructing the bridge is not applicable.

"We think the motion must be granted on this ground.

"The title of the act under which the proceeding is brought is in these words: 'Act to Establish a Uniform Basis for the Elimination of Grade Crossings.' Act March 8, 1924, 33 St. at Large, p. 1057.

"In this case there was no grade crossing at the place where the bridge was constructed. As a matter of fact, there was no road there. The Highway Department set out to build a new road at that point to extend from Greenville to Easley and beyond. Already there was such a road, known as Road No. 2, which was at that time a part of the system of state highways. This road, some hundreds of feet north of the new road, No. 13, crossed the tracks of the defendant railroad on a sound wooden bridge. South of the location of the new road No. 13 was another road crossing the railroad tracks at grade. The old road No. 2 has been removed from the state highway system, but it remains and is used as a county road. The road south of No. 13 remains and is also used as a county road and still crosses the railroad at grade. Thus it is seen that no grade crossing has been eliminated. The Highway Department has built a new road, No. 13; it had to cross the defendant's tracks, and it was necessary to build a bridge over the tracks. In order to make the railroad company liable for its share of the cost of constructing such

bridge, it must be shown that its construction effectuated the elimination of grade crossings over its tracks. The evidence is conclusive that no grade crossing has been eliminated.

"It is clear that the act in question does not apply in these circumstances; that the defendant is not liable for any part of the costs of construction of the bridge." 194 S. E. at pages 635-636.

The next case was *State ex. rel. State Highway Department v. Southern Railway Co.,* 186 S. C. 315, 195 S. E. 633. The Highway Department sought to have the railroad pay part of the cost of a replacement overhead bridge crossing the railroad's tracks and a river. A nonsuit against the Highway Department was affirmed. After deciding the case primarily upon procedural grounds, the Court added:

"It seems plain to us that this is not such a grade-crossing elimination project as comes within the intent and purpose of the act of 1924 * * * which provides a uniform plan for the elimination of grade crossings throughout the state. The testimony and the profiles and maps in evidence show that the primary object of this project was to construct a new bridge over Saluda River at Chappels. * * * Clearly, this was the moving consideration which induced the placing of the bridge at this point. The elimination of the grade crossing was an incident thereto." 195 S. E. at page 637. (The cited Act of 1924 is now Article 10 of Chapter 10, Title 58, Code of Laws of South Carolina, 1952)

The third case is *Powell v. Greenwood County,* 189 S. C. 463, 1 S. E. (2d) 624. This was an action by the receiver of a railroad to recover from a county the cost of repairing a bridge spanning a cut in which the railroad's track lay. The track had been laid many years before the road was built. When the county put in the road, the railroad built the bridge over its track and maintained it, until it was replaced by a new bridge paid for equally by the county and the railroad. The railroad repaired the bridge and sought reimbursement under Article 10 pertaining to the elimination of grade crossings.

The Circuit Judge, in an opinion reproduced in the Supreme Court's *per curiam* opinion, held that Article 10 did not apply:

" 'I am of the opinion that Sections 8437 to 8447 apply only to the elimination of existing grade crossings. These sections are in derogation of the common law and therefore will have to be strictly construed. It is my opinion that it would not apply to a case of this kind * * *'." 1 S. E. (2d) at page 625. (The cited Sections are from the 1932 Code, now Article 10 of Chapter 10, Title 58, Code of Laws of South Carolina, 1952.)

The meaning of Articles 10 and 11 seems very clear. The first authorizes the elimination of grade crossings by means of grade separation structures and provides a scheme for the apportionment of costs between the Highway Department and the railroad. The second article authorizes the reconstruction, change or alteration of such structures, the same structures originally built pursuant to the first article, and provides a similar, but not identical, scheme for the apportionment of costs.

The distinction between the bridge in question and a grade separation structure is more than a technical one. The difference is substantial. A grade separation structure has for its purpose the promotion of safety and convenience from hazards partly of the railroad's making. The Legislature must have felt that the railroad could legitimately be required to bear a part of the cost of that type of structure, which expense it could recoup over a period of years from faster time schedules and the elimination of costly grade crossing accidents. The type of structure involved in this case did not eliminate any hazards, for there were none. No benefits inured to the railroad from this bridge.

I have considered the question from all approaches, including what I believe to be the common sense approach, and in each instance the answer is the same. The action of the Highway Department exceeded its authority.

I have also heard argument as to grave constitutional questions of property rights which would have to be considered if Article 11 were applicable. I am impressed with the force of the railroad's argument, and I think that there is indeed a trend away from imposing such costs on the railroad (See *City of Winston-Salem v. Southern Railway Co.*, 248 N. C. 637, 105 S. E. (2d) 37). However, in view of the conclusion already reached, I find it unnecessary to consider the constitutional issues, because of the rule that constitutional questions will not be determined, unless their determination is essential to a disposition of the case.

I respectfully recommend that the relief sought by Petitioner be granted.