498 F.Supp. 79 (1980)
In re WIRING DEVICE ANTITRUST LITIGATION.
ROBINETTE HARDWARE CO.
v.
SQUARE D COMPANY et al.
MDL No. 331 (JBW). No. 79-C-3007 (JBW).
United States District Court, E. D. New York.
September 29, 1980.
*80 *81 I. Walton Bader, Bader & Bader, White Plains, N. Y., for plaintiff Robinette Hardware Co.
David C. Beckwith, Howard W. Fogt, Michael Fischer, Catherine B. Klarfeld, Foley, Lardner, Hollabaugh & Jacobs, Washington, D. C., for defendants Bell Elec. Co. Square D. Co.
Arthur Richenthal, Richenthal, Moss & Abrams, New York City, for defendant Leviton Mfg. Co., Inc.
Sidney Rosdeitcher, Howard Smith, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant Circle F Industries.
Gilbert S. Edelson, Marc E. Kasowitz, Eugene A. Gaer, Rosenman Colin Freund Lewis & Cohen, New York City, for defendants Eagle Elec. Mfg. Co., Inc.
Laurence Greenwald, Jay P. Mayesh, Alan Kolod, Stroock & Stroock & Lavan, New York City, for defendant Slater Elec., Inc.

MEMORANDUM AND ORDER
WEINSTEIN, Chief Judge:
Plaintiff Robinette, a South Carolina corporation, purchased some seven thousand dollars worth of wiring devices from various distributors in South Carolina about ten years ago. The devices had been manufactured outside South Carolina by defendants, who they are incorporated and have their major place of business outside the state. Claiming that illegal price fixing by the manufacturers had taken place, plaintiff commenced suit in the state courts of South Carolina alleging a breach of that state's antitrust laws.
Defendants removed to the federal court. The case was then transferred to this court by the Judicial Panel on Multidistrict Litigation together with more than thirty other cases pending in the federal courts alleging violations of Section 1 of the Sherman Act. In re Wiring Device Antitrust Litigation, 444 F.Supp. 1348 (Jud.Pan.Mult.Lit.1978). All the federal claims have been disposed of by settlement or dismissal.
Plaintiff moves to remand. Defendants move to dismiss.

I.

MOTION TO REMAND

A. Diversity

It is conceded that there is diversity between the parties. Plaintiff argues, however, that its ad damnum clause was expressly limited to less than ten thousand dollars and thus that the jurisdictional amount required for this court to exercise diversity jurisdiction is not present.
It is true that for purposes of calculating the jurisdictional amount a federal court may not look to any amount claimed as interest by the plaintiff which is attributable solely to a delay in payment or to a wrongful deprivation of funds. Such moratory interest, where not an essential ingredient of plaintiff's claim, is interest which has accrued prior to the filing of the complaint and, under the rule of this circuit and others, will be excluded from calculations of the jurisdictional amount. Rafter v. Newark Insurance Co., 355 F.2d 185, 186 (2d Cir. 1966), cert. den., 385 U.S. 828, 87 S.Ct. 60, 17 L.Ed. 63 (1966); Athan v. Hartford Fire Insurance, 73 F.2d 66 (2d Cir. 1934); Regan v. Marshall, 309 F.2d 677 (1st Cir. 1962).
Nevertheless, the sum of approximately eighty thousand dollars in legal fees attributable to this state question litigation is sought by plaintiff's counsel. While rejected *82 in connection with the settlement of the federal question wiring devices cases, we can confidently assume that such a claim would be made in the state courts of South Carolina were this court to grant plaintiff's motion to remand and were there a judgment in favor of Robinette.
While we have found no South Carolina statute or case conferring attorneys' fees on a successful litigant in a state antitrust suit, it is evident that plaintiff would have argued that South Carolina law should be so construed. In that event, attorneys' fees sought in connection with the state litigation would be properly considered by a federal court in determining whether the amount in controversy requirement had been satisfied. Irby Construction Co. v. Universal Surety Co., 326 F.Supp. 1308 (D.Neb.1971); cf. Givens v. W. T. Grant Company, 457 F.2d 612 (2d Cir. 1972). Since more than ten thousand dollars is potentially in controversy, this court has diversity subject matter jurisdiction. 28 U.S.C. § 1332.
The fact that other members of the class plaintiff seeks to represent may have claims of less than ten thousand dollars does not, as plaintiff argues, defeat jurisdiction over those who, like plaintiff, may individually recover more than the jurisdictional amount. Zahn v. International Paper Company, 414 U.S. 291, 300-302, 94 S.Ct. 505, 511-512, 38 L.Ed.2d 511 (1973); Snyder v. Harris, 394 U.S. 332, 335-36, 89 S.Ct. 1053, 1056-57, 22 L.Ed.2d 319 (1969); Clark v. Paul Gray, Inc., 306 U.S. 583, 589-90, 59 S.Ct. 744, 748-49, 83 L.Ed. 1001 (1939). There has been no certification of the class and, as indicated below, dismissal will preclude anyone other than Robinette from becoming a party plaintiff.

B. Federal Question

Plaintiff's complaint has, in addition, raised a federal question grounded in the federal antitrust laws over which federal courts have jurisdiction. 28 U.S.C. § 1337. While plaintiff has alleged only state law claims in his complaint and argues strenuously that by so doing federal jurisdiction has been precluded, it is nevertheless evident that a federal antitrust question is integral to its claims.
Robinette's complaint is based on horizontal price-fixing charges identical in all particulars to those which have previously been asserted against these same defendants in a federal indictment and in more than thirty civil class action suits brought by direct purchasers under section 1 of the Sherman Act. 15 U.S.C. § 1. All of those complaints, like plaintiff's, are in large measure carbon copies of the government's criminal charges.
A federal court need not blind itself to the real gravamen of a claim because plaintiff tenders a blindfold in the form of artificial characterizations in its complaint. Peeking to determine reality is particularly appropriate where it is apparent that the central federal claim is inseparable from the state law theory, and where the question of federal jurisdiction turns on the out-of-state status of the parties and the interstate nature of transactions complained of. Beech-Nut, Inc. v. Warner-Lambert Company, 346 F.Supp. 547 (S.D.N. Y.1972), aff'd, 480 F.2d 801 (2d Cir. 1973); Ulichny v. General Electric Company, 309 F.Supp. 437 (N.D.N.Y.1970); Sylgab Steel & Wire Corp. v. Strickland Transportation Co., 270 F.Supp. 264 (E.D.N.Y.1967); Table Talk Pies of Westchester v. Strauss, 237 F.Supp. 514 (S.D.N.Y.1964); Minkoff v. Scranton Frocks, Inc., 172 F.Supp. 870 (S.D. N.Y.1959); Fay v. American Cystoscope Makers, 98 F.Supp. 278 (S.D.N.Y.1951). Where, as here, all defendants are unquestionably engaged in interstate commerce, those who are damaged from an alleged restraint of trade find a remedy in the federal, not the state, antitrust laws. This conclusion is buttressed in this case by the longstanding holding of the South Carolina Supreme Court, described in more detail below, that the state antitrust statute under which plaintiffs have attempted to bring their action applies only to intrastate commerce and does not reach interstate commerce of any kind. State v. Virginia-Carolina Chemical Co., 71 S.C. 544, 51 S.E. 455 (1905).
*83 In Beech-Nut, Inc. v. Warner-Lambert Company, 346 F.Supp. 547, 548 (S.D.N.Y. 1970), aff'd, 480 F.2d 801 (2d Cir. 1973), a trademark infringementunfair competition case, the district court held that removal was proper although plaintiff had alleged only state law claims in his complaint, because "the case could have been commenced here under § 43(a) of the Lanham Act ..." This court denied plaintiff's motion to remand in Sylgab Steel & Wire Corp. v. Strickland Transportation Co., 270 F.Supp. 267, 268 (E.D.N.Y.1967), stating that "the mere fact ... that plaintiff makes no specific reference to federal law in his pleading and strenuously objects to the inference that his cause of action is so based, cannot be decisive in determining jurisdiction." The court held in Sylgab that plaintiff's claim, although cast as a state breach of contract action, "arose under" the 1906 Carmack amendment to the Interstate Commerce Act since the federal substantive element involved in plaintiff's claim "[was] at least sufficiently central to the dispute ... [to] have some impact on its outcome." Id. at 268.
Under any other rule, "a plaintiff could artfully defeat the right of the defendant to have the cause determined in a federal forum." Minkoff v. Scranton Frocks, Inc., 172 F.Supp. 870, 873 (S.D.N.Y.1959). Investigation beyond the face of the complaint is appropriate where "federal jurisdiction hinges on the parties', or one of them, having a particular status, ..." Fay v. American Cystoscope Makers, Inc., 98 F.Supp. 278, 280 (S.D.N.Y.1951).
In denying a motion to remand in a case virtually identical to the one at bar, the district court for the District of South Carolina found that plaintiffs' careful avoidance of any federal allegation while drafting their complaint did not "prevent removal to the federal court where the main thrust of the complaint is federal in nature." Three J Farms, Inc. v. Alton Box Board Co., 1979-1 Trade Cas. (CCH) (D.S.C.1978), ¶¶ 62,423, 76,547, 76,550, rev'd on other grounds, 609 F.2d 112 (4th Cir. 1979), cert. den., 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980). And the court went on to hold, in light of the South Carolina Supreme Court's decision in State v. Virginia-Carolina Chemical Co., 71 S.C. 544, 51 S.E. 455 (1905), that "any claim for damages resulting from the importation or the sale of imported corrugated containers is not a South Carolina claim, but purely a federal claim." Id. As in Three J Farms, plaintiff cannot argue that it has brought its action under the antitrust laws of South Carolina since South Carolina has itself "displaced state law from the field," State of Connecticut v. Levi Strauss & Co., 471 F.Supp. 363, 367 (D.Conn.1979) (bona fides of sole state claim brought by state itself was not in doubt), whether or not Congress has in fact preempted it.
Since it is unquestioned that defendant here is engaged in interstate commerce and that the products whose prices are the subject of this action were manufactured outside South Carolina and shipped there for sale, and since South Carolina has itself limited the application of its state antitrust statutes to intrastate commerce, the true nature of plaintiff's complaint is federal.
Section 1337 of title 28 of the United States Code, conferring subject matter jurisdiction on the district courts in cases arising under "any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies," does not contain an amount in controversy requirement. Felter v. Southern Pacific Co., 359 U.S. 326, 329 n. 4, 79 S.Ct. 847, 851 n. 4, 3 L.Ed.2d 854; Hales v. Winn-Dixie Stores, Inc., 500 F.2d 836, 841 (4th Cir. 1974). We need not, as in the case of diversity-based jurisdiction, consider the sufficiency of plaintiff's monetary claim.
Removal was proper. Plaintiff's motion to remand is denied.

II.

MOTION TO DISMISS
Section 39-3-10 of the Code of Laws of the State of South Carolina, upon which plaintiff relies, entitled "Arrangements, contracts, agreements, trusts and combinations *84 adversely affecting competition or price declared against public policy," provides the state equivalent of the federal Sherman Act. It reads:
All arrangements, contracts, agreements, trusts or combinations (a) between two or more persons as individuals, firms or corporations, made with a view to lessen, or which tend to lessen, full and free competition in the importation or sale of articles imported into this State or in the manufacture or sale of articles of domestic growth or of domestic raw material, (b) between persons or corporations designed or which tend to advance, reduce or control the price or the cost to the producer or consumer of any such product or article and (c) between two or more persons as individuals, firms, corporations, syndicates or associations that may lessen or affect in any manner the full and free competition in any tariff, rates, tolls, premium or prices in any branch of trade, business or commerce are declared to be against public policy, unlawful and void.
South Carolina's Supreme Court has held that section 39-3-10 does not apply to activities which are primarily interstate in nature. In State v. Virginia-Carolina Chemical Co., 71 S.C. 544, 51 S.E. 455 (1905), a New Jersey corporation and seven South Carolina corporations were charged with monopolizing the state's fertilizer industry through the acquisition of controlling interests in nearly all the fertilizer producers in the state. Upholding the complaint, the court expressly limited the application of the South Carolina antitrust statute to intrastate activities by striking down as unconstitutional that portion of the statute relating to "the importation or sale of articles imported into this State". It declared:
[T]his clause is an attempt by the state to exercise a prerogative of Congress to regulate interstate commerce. No act of Congress has invested the state with authority to interfere with this subject of commerce, and the police power cannot be invoked for that purpose. The state has no power over importations of articles of commerce.
Id. at 561, 51 S.E. at 461. See also, Three J Farms, Inc. v. Alton Box Board Co., 1979-1 CCH Trade Cases (CCH) ¶¶ 62,423, 76,547 (D.S.C.1978), rev'd on other grounds, 609 F.2d 112 (4th Cir. 1979), cert. den., 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980) (application of section 39-3-10 "was limited many years ago to exclude activities having an effect on interstate commerce.").
The South Carolina rule limiting section 39-3-10 to intrastate activities is consistent with decisions in other states interpreting analogous antitrust statutes. For example, Beltone Electronics Corp. v. Selbst, 1977-2 Trade Cases CCH ¶¶ 61,586, 72,387 (Sup.Ct. N.Y.Co.1977), aff'd mem., 61 App.Div.2d 966, 403 N.Y.S.2d 1019 (1st Dep't 1978) held that:
[W]here interstate commerce is involved, the Federal antitrust laws operate to preempt the field and to oust the State courts of jurisdiction of causes of action for monopolization or restraint of trade, even though the acts complained of may violate State antitrust laws such as our Donnelly Act.
Id. at 72,387. Similarly, in Young v. Seaway Pipelines, Inc., 576 P.2d 1148, 1151 (Okl.1977), the Oklahoma Supreme Court declared: "The courts of this state have no jurisdiction over the subject matter of an alleged interstate conspiracy to violate antitrust laws." Accord, Kosuga v. Kelly, 257 F.2d 48, 55 (7th Cir. 1958), aff'd, 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475 (1958) (Antitrust Act of Illinois applied "only to intrastate commerce"); Denison Mattress Factory v. Spring Air Company, 308 F.2d 403, 413 (5th Cir. 1962) (Texas' antitrust statutes would not be applied to interstate activities); Cessna Finance Corp. v. White Industries, Inc., 1976-2 Trade Cases (CCH) ¶¶ 61,105, 70,006, 70,008 (W.D.Mo.1976) ("The Missouri antitrust statutes do not apply to contracts relating to interstate commerce.").
Published Opinions of the South Carolina Attorney General further illustrate the restricted scope of section 39-3-10. For example, he advised the South Carolina State *85 Senate in 1941 that the state's antitrust laws would apply to anticompetitive arrangements between newspapers located in the "same city, town or county within the state", but not to arrangements between local newspapers and national or international news services. 1941-42 Opinions South Carolina Att'y General, p. 251. According to the Opinion, such arrangements
so involve interstate commerce and its instrumentalities as not to be reached by present State law.... Such national and international news services appear to clearly qualify for protection under the laws relating to interstate commerce and, therefore, to be immune from State regulation.
Id.
Exclusion of interstate commerce from the scope of section 39-3-10 reflects the well-established South Carolina policy against enforcing state statutes which may impose an undue burden on interstate commerce. For example, in State v. Yetter, 192 S.C. 1, 5 S.E.2d 291 (1939), the defendant, a salesman representing a nonresident retailer, was convicted of violating a state statute which required nonresident merchants to obtain licenses from the State Tax Commission for the privilege of displaying goods in showrooms located in the State. The South Carolina Supreme Court overturned the conviction, noting that each of the defendant's activities in South Carolina  arranging showroom displays, soliciting orders and importing goods  "was a related and necessary step in the consummation of a transaction in interstate commerce." Id. at 5, 5 S.E.2d at 293. Accordingly, the Court held that the statute as applied to the defendant was void because it constituted an impermissible burden on interstate commerce in violation of the Federal Constitution. Whether the statute was in fact unconstitutional is not decisive here, for this and other cases reflect a clear policy of South Carolina to construe its laws to avoid any serious interference with interstate commerce.
Illustrative is Carolina Components Corporation v. Brown Wholesale Co., Inc., 272 S.C. 220, 250 S.E.2d 332 (1978), where the Supreme Court of South Carolina permitted plaintiff, a North Carolina corporation, to commence an action to recover for goods sold and delivered to a domestic purchaser, even though the plaintiff was not qualified to do business in the state. The court held that plaintiff was exempt from the South Carolina domestication requirement since its sole contacts with South Carolina  shipping merchandise into the state to fill orders solicited by sales representatives  involved "only soliciting, cultivating and supervising its interstate business." 272 S.C. at 223, 250 S.E.2d at 334. Accord, State v. Ford Motor Co., 208 S.C. 379, 38 S.E.2d 242 (1946).
Under the rationale of these state authorities, Robinette's complaint must be dismissed. Defendants' business activities are wholly interstate in character. They have no special relationship to South Carolina. None of the defendants is incorporated in South Carolina and none has its headquarters there. All of the purchases plaintiff relies upon originated in factories outside South Carolina.
The sole connection between the defendants and South Carolina is that an insignificant portion  approximately one percent  of the wiring devices which they have manufactured outside the state has been imported into the state. Thus, each defendant's activities in South Carolina involve nothing more than "soliciting, cultivating and supervising its interstate business." This circumstance is not sufficient to invoke the application of section 39-3-10. The well-established South Carolina rule that wholly interstate activity is outside the scope of that section must be applied. Under Erie, the suit must be dismissed because of the interstate nature of the commerce providing the foundation for the complaint.
Even were the state's antitrust laws to be construed to apply to wholly interstate shipments, South Carolina courts would deny recovery to plaintiff because it would construe its statute to permit recovery only by direct purchasers in the same way that the Supreme Court has interpreted *86 the Sherman Act. Illinois Brick Company v. Illinois, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). Under federal law direct purchasers may recover the entire illegal overcharge without regard to whether it was passed on to indirect purchasers. Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968).
Robinette is an indirect purchaser and, therefore, has no claim for damages under federal antitrust law. Seeking to circumvent the federal law, it sued under South Carolina law, claiming that unlike federal law, the South Carolina antitrust statute permits recovery by indirect purchasers. If Robinette were correct, it would mean that defendants would simultaneously be liable to both direct and indirect purchasers for each alleged unlawful sale of wiring devices. Each indirect purchaser at each level of distribution could recover not merely the defendant's alleged illegal overcharges, but the entire purchase price paid by that indirect purchaser for the goods, including each mark-up at each level of distribution.
There is no authority under South Carolina law  statutory or decisional  which would permit the imposition of such multiple liability. On the contrary, the language of the damages provision of the state's antitrust law limits the application of the South Carolina antitrust statute to direct purchasers. Section 39-3-30 of the South Carolina Code of Laws provides:

Any person who may be injured or damaged by any such arrangement, contract, agreement, trust or combination described in § 39-3-10 may sue for and recover, in any court of competent jurisdiction in this State, from any person operating such trust or combination, the full consideration or sum paid by him for any goods, wares, merchandise or articles the sale of which is controlled by such combination or trust.

(Emphasis added.)
A plaintiff's recovery is limited to situations where the alleged wrongdoer has "controlled" the particular purchase of goods by plaintiff. There is no allegation in Robinette's complaint that defendants maintained any control over the sales of wiring devices by middlemen to Robinette. The complaint concedes that the sale of wiring devices to the plaintiff was made not by defendants but by persons who purchased wiring devices from defendants. Since the sales of wiring devices to members of the class plaintiff purports to represent were not "controlled" by the defendants, they cannot under the terms of the statute be liable to Robinette or others in the same posture.
Apart from the plain meaning of the language of the statute, South Carolina's legislature could not have intended, as Robinette claims, that the provision entitle each indirect purchaser to recover the full purchase price of goods sold in South Carolina pursuant to an alleged illegal interstate conspiracy. Such an interpretation would impose a staggering penalty on defendants, since it would mean that a manufacturer would be liable not only for the price which it charged for its goods in direct sales, but for the full amount paid by each purchaser in the chain of distribution, no matter how many middlemen handled the goods and no matter how much each of them marked up the price. In fact, Robinette seeks recovery on behalf of all ultimate consumers of wiring devices, as well as the retail stores from whom the consumers purchase the wiring devices. Thus according to Robinette's complaint, defendants are liable for one hundred and eighty million dollars which allegedly represents the total sales price of the wiring devices sold in South Carolina alone to all indirect purchasers in the chain of consumption. This would be in addition to the liability for direct sales in violation of the Sherman Act  claims which have been settled in this MDL litigation for fifteen million dollars.
There is no precedent for the extraordinary penalty Robinette claims that the South Carolina statute imposes. Five other states have enacted statutes which permit the recovery of the full purchase price of goods sold in connection with antitrust violations. *87 Colo.Rev.Stat. § 6-4-106, Ind.Code § 24-1-1-5, Kan.Stat.Ann. § 50-107, Tenn. Code Ann. § 69-106 and Wisconsin Stat. § 133.14. No case brought to our attention in these states, or in any jurisdiction, extends recovery to indirect purchasers in the absence of a statute specifically permitting such recovery.
The only state court to consider an indirect purchaser claim in the absence of a statute specifically authorizing claims by indirect purchasers has held that Illinois Brick applies to that state's antitrust laws. In Russo & Dubin v. Allied Maintenance Corp., 95 Misc.2d 344, 407 N.Y.S.2d 617 (Sup.Ct.N.Y.Co.1978), the New York Supreme Court held that tenants of commercial and other buildings could not assert claims under the Donnelly Act against building maintenance companies with whom they did not deal directly. As the court noted:
Defendants argue that the Supreme Court rationale in the Illinois Brick Co. case is even more compelling under the New York Donnelly Act. Any other result would create serious conflict between enforcement of State and Federal antitrust laws which would subject defendants to multiple liability in derogation of due process. There is now pending in the United States District Court identical treble damage claims on behalf of direct purchasers of maintenance services, landlords and managing agents, from these defendants. ... If the direct purchasers class in the Federal court recover, allowing the putative class proposal by the plaintiffs here, to also sue would subject defendants for a second time to liability for damages. ...
In summary, the court finds that plaintiff, as an indirect purchaser of building maintenance services has no valid claim, under the holding of the Supreme Court in Illinois Brick, ....
Id. at 347-348, 349, 407 N.Y.S.2d at 620.
This conclusion is buttressed by the South Carolina policy that state antitrust laws be interpreted consistently with federal antitrust precedent. South Carolina has long adhered to a policy of following federal precedents in matters relating to state trade regulation enforcement. The South Carolina Supreme Court has consistently relied on federal precedents in deciding cases under section 39-3-10. See, e. g., State v. Virginia-Carolina Chemical Co., 71 S.C. 544, 51 S.E. 455 (1905); South Carolina Cotton Growers' Co-Op Ass'n v. English, 135 S.C. 19, 133 S.E. 542 (1926). Similarly, South Carolina's Attorney General has frequently pointed to federal case law in opinions on the legality of various trade practices under the state statute. See, e. g., 1976-77 Opinions Att'y General No. 77-209, p. 161. Finally, the South Carolina legislature has recently declared its intent in other trade regulation statutes that South Carolina's courts "be guided" by the interpretations of the Federal Trade Commission and the federal courts of relevant federal laws. S.C. Code § 39-5-20 (1976). Analogous incorporations by reference to federal law may be found in other recent South Carolina trade regulations, S.C.Code § 56-15-30 (1976); S.C.Code § 37-2-304 (1979 Cum.Supp.), S.C. Code § 37-2-503 (1976). Although there is no specific reference to federal law in section 39-3-10, this section of Title 39 would be read in light of the full regulatory scheme, including cognate and subsequent legislation. See, generally, Southern Railway Co. v. South Carolina State Highway Dep't, 237 S.C. 75, 115 S.E.2d 685 (1960); Abell v. Bell, 229 S.C. 1, 91 S.E.2d 548 (1956). The South Carolina legislature's stated intention that federal antitrust law be used as a guide in trade regulation matters would apply to a South Carolina court's interpretation of section 39-3-30 since the legislative canon is consistent with the state courts'.
Failure to apply Illinois Brick in this action would create the same problems the Supreme Court sought to avoid when it rendered that decision. One of the principal reasons advanced by the Court in adopting the rule that only direct purchasers could recover under federal antitrust statutes was the "serious risk of multiple liability for defendants" that would exist if different *88 plaintiffs at different levels of a distribution chain were allowed to maintain actions. Illinois Brick Company v. Illinois, 431 U.S. 720, 730, 97 S.Ct. 2061, 2067, 52 L.Ed.2d 707 (1977). In view of South Carolina law, it is not necessary to address the serious questions which would otherwise have to be faced under the Supremacy, Due Process and Commerce clauses of the Federal Constitution.
Pursuant to South Carolina law, this court must, under Erie, follow the rule of Illinois Brick limiting recovery under the South Carolina antitrust statute to direct purchasers. Robinette has stated no claim under South Carolina or Federal law. The motion to dismiss is granted without costs or disbursements.
So ordered.