RichaRdson, J.
This court has weighed the argument so well presented on the part of the appellants, and appreciate its force.
The practical power confided to the rail road company by their charter, is great; and, from its very nature, such power might be abused or perverted, and landholders annoyed. Because the route of this great commercial way is, from necessity, left to the understanding, skill and discretion of the company; and their authority might be practically enforced, with too little consideration for individual justice, or human feelings. But, for any such abuse of power, the laws supply ample remedy. An independent jury is a refreshing sight and sure refuge in every instance, and is secured by the charter; and for continued abuse, or misuse, any charter may be repealed. But when the legislature have confided express power, it is not for this court to anticipate abuses and offer to restrain them, when our judicial province might be hereafter required in their supervision and correction. All powers, great and small, may be made oppressive. Yet, still, our necessities require them to exist in some tribunal.
If the rail road route had been given for a common highway, and surveyors named to locate its track through the entire State, and contractors hired to construct such road, with the emolument of toll gates, provided for compensation, the objections offered would be of similar character to those offered in the argument for the present defendants. There would be no difference in principle or degree.
The true substantial difficulty felt by the court, is in coming to the conclusion that the rail road is to be put on the footing and character of a highway, and is erected, not for private, but for such general purposes, as to render it an institution for such public purposes. But, according to the view taken in the circuit decision, that the application of the eminent domain of government is, from its essential nature, very various ; and to be made according to the successive exigencies, of the State, it may be rationally assumed, that rail roads, although of recent origin, have already become of incalculable public importance: That the enlarged ends and off *398 jects of this great rail road especially, is, for the transportation and intercourse, commercial and social, of several different States, whose interests are to be ever regarded, and the mutual confidence that belongs to such a work sacredly fulfilled. This characteristic is irreconcileable with the proper conception of a mere private way.
Again: Rail roads have been recognized as highways in other States, with whose adjudications upon great subjects of commerce and reciprocal advantage, a liberal comity ought to be observed throughout the States: and the same great objects steadily kept in view by all who value rail roads, a new moral cement of the American Union, as well as the useful vehicles of our vast and increasing internal commerce: and thus uniting in their natural operation pecuniary profit with moral fitness, and the 'politic establishment of so many independent States.
May not rail roads, then, be fairly considered, in character and objects, (and ours more especially,) as international, and therefore public highways.
With such sentiments, and for such purposes, we are bound to consider the great ends of our own rail road system, and to inquire, under their guidance, whether the eminent domain of government may not be fairly and rationally applied for its advancement, in the very way-pointed out by the present charter of the Louisville, Cincinnati and Charleston Rail Road Company. In such an instance, we should especially require, that the charter shall be clearly unconstitutional, before we put it in the power of any one freeholder to arrest the progress of so great a work of usefulness and high considerations. It is not enough that the human mind may balance on the subject.
But take another point of view, which I cannot help thinking of lasting importance. Such a rail road as ours, should be held as a highway on account of its great objects: anehfer the same reasons, to be kept under public control. Is it not wise to hold such a company, as the guardians, or lessees, of a great highway, endowed with a public franchise : yet subject to the control which their purposes indicate as necessary and proper for such an establish *399 ment, and which the general right to use the road absolutely requires 1
Such a road must be held as a part of the public domain, farmed out to individual men, for its practical administration and order alone — and if placed aloof from such control, it would inevitably become suspected of partiality, and odious to the people.
Since the argument before this court, our attention has been turned to the case of Beekman v. The Saratoga and Schenectady Rail Road Company. It is found in Paige’s Ch. Rep., 3 vol., 45, and is a learned decision of Chancellor Walworth, of New York. It will be satisfactory to the parties concerned in interest, to know, that the following points were ably discussed and decided in that case : 1. “Acts authorizing rail road companies to taire private property, for the purposes of the road, upon paying full compensation, are constitutional.” 2. “ Rail roads are public improvements ; and the legislature can appropriate private property for such improvements, or authorize a corporation thus to appropriate it, upon full compensation to the owner.” 3. “ The public have an interest in the use of the rail road — and the company are liable to respond in damages if they refuse to transportan individual, or his property, without reasonable excuse, upon being paid the proper rate of transportation.” 4. “ The legislature may regulate the use of the franchise, and limit the amount of tolls, unless they have deprived themselves of that power by the contract.” 5. “It belongs to the legislature to decide, whether the public benefit is of sufficient importance to justify the exercise of the eminent domain in such cases.” 6. “And the only restriction is, that private property cannot be taken without full compensation and in the mode prescribed.”
Thus, then, the decision of this court concurs in every material respect, with those of other American judicatures, who have considered the great modern establishments of rail roads. — And, it may be seen, that the manner of reasoning in each court has been drawn from the same great principles inherent in, and consecrated by the American constitutions. And thus, too, we have increasing evidence of our homogeneous principles — of their moral influence *400 and sure fruits, in the harmony, of opinions — and the consequent union in action, which engender-reciprocal regard and tend so much to confirm the success of sQ$.iany independent States, united together by such principles. ÍM'
Chappell, for the motion.
Blanding, contra.
The appeal is dismissed on all the grounds taken.
Dunkin, Johnson, Harper, Chancellors; O’Neall, Butler, Gantt, Evans, Earle, Justices, concurred. Johnston, Chancellor, gave no opinion. .