The opinion of the Court was delivered by
WaRdlaw, J.
By the Act chartering this company, (1845, II Stat. 327, Sec. 10, 11,) the company is authorized to take any land, that may he required by it in the execution of the purposes for which it was chartered, — subject to the duty of making compensation to the land-owner: if there cannot be agreement between the company and the land-owner as to the amount of compensation, either of them may apply to the Court for the appointment of commissioners to assess the compensation, or (as it is expressed,) make valuation of the land required by the company ; and the commissioners are required to return their proceedings to the Court, there to remain of record: “ Either party to the proceeding may appeal from the said valuation to the next session of the Court granting the commission, giving reasonable notice to the opposite party of such appeal, and the Court, upon satisfactory proof that the appellant has been injured by such valuation, shall order a new valuation to be made by a jury, who shall be charged therewith in the same term, and their verdict shall he final and conclusive between the parties, unless a new trial be granted; and the lands (and right of way,) so valued by the commissioners or jury shall vest in the said company in fee simple so soon as the valuation thereof may be paid, or tendered and refused.” The pendency of an appeal from the commissioners shall not interrupt the work of the company, but when the appeal may be taken by the company, it shall proceed in the work only on condition of giving a bond “ conditioned for the payment of said valuation and interest, in case the same be sustained, and in case it be reversed for the payment of the valuation thereafter to be made by the jury, and confirmed by the Court.”
*288 In the absence of a written contract, it shall be presumed that any land within a certain distance from the road has been granted by the owner, to the company, “ and the said company shall have good right and title to the same, and shall have, hold and enjoy the same unto them and their successors, so long as the same may be tised only for the purposes of the said road, and no longer,” — unless the land-owner shall prosecute his right “within two years next after the construction of the said road” over such land, and in default of such prosecution, within two years as above, the land-owner “ shall be forever barred to recover the same.”
The question now arises concerning the costs of an appeal from the commissioners, and the decision of it requires a full comprehension of the relations, rights and obligations growing out of the foregoing provisions.
The word costs does not occur in the charter, and probably there cannot be found in it anything, besides what is mentioned above, that is calculated to give the least intimation of the intention of the Legislature concerning the costs of an appeal.
In this State the right of the State, in the exercise of the eminent domain, to take private property for public use has been fully settled, and its power to grant this right to a corporation created for a purpose of public improvement has been solemnly recognized: (The L. C. & C. R. R. Co. vs. Chappell, Rice, 383, and cases there cited,) — the duty of the State to make compensation is secured by no constitutional provision, but rests on natural justice, which is to be invoked by petition to the Legislature: this duty may be imposed upon the grantee of a franchise as a condition of privileges granted, in which case the extent of the duty and mode of performing it, as defined in the grant, become matters of contract between the State and the grantee: (McLauchlin vs. R. R. Company, 5 Rich. 598) — if the whole duty required by natural justice should not have been imposed upon the grantee, or should not be performed faithfully, the obligation abiding upon the State covers whatever may remain unperformed.
*289 Under this charter, then, the company cannot by taking land, properly required for its purposes,, become a trespasser, so as to he liable to punitive damages : but by taking, it assumes the obligation of paying to the extent and according to the mode provided : the performance of this obligation is a condition precedent to its acquiring a fee simple in the land, so that the land and the improvements that may be made on it are virtually mortgaged to secure the performance. Taking and occupation for two years after the construction of the road raise, however, without payment and in the absence of a written contract, the presumption of a grant from the owner of land within a certain distance of the road, to continue so long as that land may he used for the purposes of the road. The sum to be paid by the company is to be fixed first, by agreement, — in default of that, second, by assessment of commissioners, — upon appeal from that, third, by a jury. No responsibility hut that of making payment having been devolved upon the company, and no mode, besides one of the three above-mentioned, for fixing the sum having been provided, it is manifest that all other modes are excluded, and that a land-owner, who would secure compensation and guard against the presumption of a grant, must resort to one or another of these three according to circumstances.
If an assessment should be made by commissioners and returned to the Court, and neither party should appeal within the time prescribed, the assessment would be a written contract between the parties, and the sum assessed would be a debt of record due from the company to the land-owner. It might he recovered by an action of debt, — possibly an order for confirmation of it, as of an award, might he obtained; but without some action on it, it could hardly be supposed that judgment could be entered on it, much less that costs could he recovered.
The appeal to the jury is only a continuation of the previous proceeding before the commissioners, which was really commenced when either party gave to the other proper notice preliminary to an application for the appointment of commissioners. *290 The words “ party to the proceeding,” “new trial,” “ confirmed by the Court,” and the general purport of the 10th section of the charter, show, that the proceeding, as a whole, is contemplated as a suit for the prosecution of a.right. It is a suit strange and anomalous, which may he originally instituted by either party, and may at the instance of either party be carried on beyond stages at which it would otherwise stop: in which the right is assumed to be acknowledged by the party that is bound to satisfy it, and the dispute is only as to quantum — how much has been satisfied, how much will satisfy. In it there are however parties litigant, and one of them who, whether he calls his adversary into Court or is himself called in by the adversary, and whether he stands as appellant or as appellee, may well be regarded as plaintiff. The objection does not then lie to the allowance of costs in this proceeding, which has prevailed in cases wherein it has been held, that, although there were damages found by a jury, there was not a plaintiff or demandant who came within the provisions of the statute of Gloucester. (Strange, 1069. Hullock on Costs, 20.)
This Court is of opinion that according to indications of the intention of the Legislature which may be discovered, judgment and execution may follow the valuation made by the jury. As to this, it has been argued, that the bond is required when the company appeals, as a condition of proceeding in the work: and that, if the company chooses to suspend the work, it may decline taking the land after an unsatisfactory valuation has been made by the jurythat the right in the land is withheld until payment has been made, and if the company should take, debt against it would lie on the proceedings which “ remain of record.” But besides what has been already said as to the general purport of the proceeding, we observe that the taking of the land must precede any application that can be made by the land-owner, and in mutuality of right ought to precede any to be made by the company: that land once taken cannot be declined without involving an acknowledgment of a trespass in the taking : that the bond is a limitation of the high power of *291 taking without previous compensation, and a restraint upon litigiousness in resisting just payment: that the result of a trial in Court, could not, without plain expression, be held to be subject to the option of one of the parties ; and that when, in what we have seen is a suit, ascertainment has been attained, judgment and execution, without plain denial, must have been intended to follow. But these common law consequences of a verdict by no means necessarily include costs.
Costs, eo nomine, were not given at common law — (Bac. Abr. Costs, A,) — the right to recover them must depend upon some statute. The statute of Gloucester, (6 Ed. I., c. 1,) made of force here, by its recognition in other statutes which are expressly made of force, gives costs to the plaintiff in all cases where he recovers damages; and subsequent statutes confer a reciprocal right in such cases upon a successful defendant. (23 H. 8, c. 15, 2 Stat. 462; 4 Jac. 1, c. 3, 2 Stat. 510; 13 C. 2, Stat. 2, c. 2,2 Stat. 513; Beaufort vs. Danner, 1 Strob. 176.) Pilfold’s case and the Statute 8 and 9 Wm. 3, c. 11, Sec. 3, concerning costs in actions of waste, show that a distinction was for a long time made between cases where damages might have been recovered at common law and those' where damages are originally given by a statute subsequent to that of Gloucester; but the distinction has been overruled. (10 Co. 116, a; Cowp. 368; 2 Wils. 91; 3 Burr. 1723; 1 T. R. 71.) Indeed it must be admitted that although the rule often laid down has been, that statutes which give costs are to be construed strictly,' because eosts are a kind of penalty, the statute of Gloucester has for nearly a century been regarded as a remedial Act, and has received a liberal interpretation. (1 Salk. 205; 1 H. Blac. 13.) It is permitted to extend its operation to new subjects which have been created since it was passed, where this extension seems to promote the intention that prevailed in the creating Acts ; and where the intention has not been expressed, it has been sought in considerations of justice and expediency. Thus a party grieved, to whom by a new statute an action for a certain penalty has been given, without mention of costs, shall recover *292 his costs, (1 Salk. 206 ; Hull, on Costs, 201,) because the penalty being intended as a recompense for the wrong done to him in particular, if he could recover only that specific sum, without any indemnification for his costs, it would be frequently vain to sue, since the costs might exceed the sum recovered : but it was formerly held otherwise, where the statute gave no certain penalty, but only his damages in general, because the jury might give the plaintiff full satisfaction by way of damages. (Cro. Car. 560; Bac. Abr. Costs, E. 3.)
Let us endeavor to discover what the Legislature probably intended concerning the costs in question. If by force of the stat. of Gloucester costs follow the recovery of a sum from the company, under the name of damages imputed to that sum, then no matter what the previous course of the proceeding may have been, any the least sum recovered must carry costs. In this very case the assessment of the commissioners has by the last verdict been reduced below one-fourth of its amount: but much worse cases might be imagined. $5,000 might be assessed by commissioners ; the land-owner, not satisfied, might appeal— he might crowd the Court with witnesses, and consume days in efforts to make his grievances appear, and yet the result, and the just one, might be a verdict of $50 for him. Would it be just or expedient that he should recover his costs ?
If it should be said that the costs should abide the result of the appeal, it will be found that no simple rule of this kind would serve. By this rule is meant that the party whose condition is made more advantageous by the verdict, should recover costs : — if no change of the assessment should be made, the costs to fall upon the appellant. But suppose an assessment of $500 — refusal of the company to pay — offer of the land-owner to accept $400, and verdict for $450. Ought the company to recover costs 1 Or, in case of a like assessment, suppose offer by the company to pay $600, and verdict for $550. Ought the land-owner to have costs 1 Or suppose an appeal by both parties, the land-owner claiming much more than the assessment, and the company contending that he had been already com *293 pensated by the benefit he had received from its works, — and a verdict for the sum before assessed. Which party ought to pay the costs ?
It has been urged that in this proceeding, the issue is to be ordered by the Court, and that under the rule laid down in the case of Todd vs. Stroud, 1 Rich. 25, “ in all issues which the parties are entitled to make up as a matter of right, or when the Court neglects to make an order on a feigned issue regulating the costs, the costs follow the result of the case.” An order of the Court is indeed required by the very terms of the 10th sec. of this charter, and some satisfying evidence must be shown before it is granted, but when granted it must be an order “ for a new valuation to be made by a jury.” (See 1 Rich. 3 ; Rice, 268; 1 McMul. 66.) Unquestionably under this provision the Court has control over the form in which the matter shall be submitted to the jury, the mode of trial, and in general all questions of practice involved: but the discretionary power of the Court over the costs could not be safely inferred from its discretion to grant or refuse a prescribed order ; and whether, without discretionary power in the Court, costs in this case follow the result, and if so, what is the result, are questions depending upon the general law under the statute of Gloucester and the special provisions of this charter. In a feigned issue, properly so called, the fiction is that the action is for recovery of a wager, and the verdict decides for some future purpose a distinct question of fact upon which the wager was laid. If no special direction concerning costs has been made, costs follow the recovery of the wager, as of any other sum of damages. Fitzwilliam vs. Max wall, 7 Taunt. 31. The Court has no discretionary power in such a case to refuse costs, if the plaintiff in the issue has not by his own consent been barred of his right to recover them. Herbert vs. Williamson, 1 Wils. 324. But as a feigned issue, not specially directed by the statute, cannot be tried without the consent of the Court, and all proceedings in it without such consent, are considered as a contempt and will be stayed, the Court, when it orders a feigned issue, may require the parties to consent *294 that the costs should he at the discretion of the Court: Hoskins vs. Berkeley, 4 T. It. 402; and such consent is understood to have been required, whenever an order for such issue has been granted. Baker Sy Co. vs. Bushnell, 2 McMul. 23. Feigned issues have not latterly been used in this State, and since the decision made in Rice vs. Gist, 1 Strob. 82, that all wagers are unlawful, would not have been tolerated. They would, in their ordinary form, have been inapplicable to questions of valuation, such as we are now considering, for here a range must be left to the jury in the inquiry, how much 1 and no issue, real or feigned, could be devised, which would present a distinct question, the decision of which, in the affirmative or the negative, would settle the matter in dispute between the parties. When an issue is ordered by the Court of Common Pleas, on a collateral question, for the guidance of its own judgment in a matter before it, costs under our practice and decisions, follow the verdict, or are to be borne by one or the other party according to the direction of the Court; either because the issue grows out of, or is connected with, a case in Court, in which costs are allowed by statute, or because the Court has actually ordered, or is presumed to have ordered, that the trial shall be had on the condition, that the costs shall abide the result, or shall be at the discretion of the Court. (See 2 Tidd’s Prac. 94.7; Miller’s Compil. 146; Bac. Abr. Costs, H.) The express refusal of a party to enter into a consent rule, where costs could be given by consent, would be ground for refusing an order for trial if he applied for it, or for taking the contested fact as if decided against him, where the other party was moving. Costs do not follow the verdict in an issue from Chancery, because the issue is part of a case in which Chancery has control over the whole costs. In an appeal from the Ordinary, costs did not follow the verdict before 1839, because the statute directing the appeal had made no provision concerning costs, and the case was not one in which damages were recovered, so as to be within the statute of Gloucester, nor one that fell within any other statute allowing costs; since 1839, costs do follow, because they are given by statute. *295 (2 N. and McC. 377; 11 Stat. 42.) Whenever a statute directs an issue, and either the parties are at liberty to make it up and present it for trial, without previous order of the Court, or the Court is required to order it, reference must be had to the statute for decision of the question concerning the costs, and the authority of the Legislature, express or implied, must be shown, to justify their recovery. (Attachment Act, 1774, 3 Stat. 618; 1 Bail. 515.) If the statute is entirely silent, and the issue is one in which damages are recovered, or one falling under any former statute allowing costs, the authority has been given: — if it is one, concerning which the .statute has made reference for analogy to another proceeding wherein costs were allowed, the authority is implied ; as, for example, in the action of trespass in the nature of ravishment of ward provided by Act of 1740 (7 Stat. 398) for trial of a negro’s freedom, costs are allowed, because in trespass damages were recoverable at common law, and in ravishment of ward at common law damages were recovered, and by statute both damages and the body of the ward: — if it is one growing out of or connected with a case, in which costs are allowed by a former statute, the implication is that the incident was intended to take the nature of the principal, and costs follow as accretions to the original case. (Bac. Abr. Guardian F.; Clifton vs. Phillips, 1 McC. 469; 6 Stat. 61; 11 Stat. 359; 4 Stat. 493.) Where a discretion is given to the Court, under which it may grant or withhold the order for the issue prescribed by statute, authority concerning the costs may be more readily implied. Independent, however, of the special directions of any statute, in almost every matter brought before thé Court, some collateral question of fact may arise, upon which the decision of a jury may be necessary; and upon every such question the Court may order an issue to be tried, upon the condition imposed on the parties, that the costs shall follow the verdict or abide the discretion of the Court. Costs of the feigned issue itself are recovered, even where the issue grows out of a criminal proceeding, 'or out of litigation in the spiritual Court, or a question before a local board of commissioners, or any other *296 matter not of itself sufficient to give recovery of costs (1 Wils. 261; 2 Burr. 1017; Barnes, 130 ; 7 Taunt. 31): and even in the proceedings between the company and a land-owner under the charter now before us, preliminary or collateral questions might arise, in the trial of which the costs would be subject to the order of the Court, because the trial would be for guidance of the Court, and could not be had without its discretionary permission. This Court would be glad to find that a discretion had been entrusted to it in making the order for valuation, under which general rules might be applied that would subserve the ends of justice and sound policy. But it finds, upon examination, that in charters, which in general, scope are similar to the one now under examination, that have been granted in England and some of these United States, the costs of assessment have been regulated with more or less minuteness of detail. (3 Railway and Canal cases, 401; 3 Mars. 268 ; 5 Wend. 78.) It cannot but feel that it would be an unwarrantable stretch of power on its part, to undertake to supply what the Legislature has omitted, perhaps carefully omitted, by any regulations of-its own for establishing the right of either.party to costs, according to the effect which the result has had on the appellant, the offers which have been made by either or both of the parties, the grounds taken by them respectively in the appeal and trial, and other circumstances which would influence a wise discretion.
After the most careful examination of the principles which control the recovery of costs in issues ordered by the Court of its own authority, or by the Court under the directions of a statute, or by a statute itself, the irresistible conclusion seems to be that either the costs must, under the statute of Gloucester, be recovered by the land-owner if he recovers any thing to be paid by the company, and by the company if the verdict is for it, or else that no costs at all are to be recovered upon the valuation by the jury, any more than upon the assessment by commissioners. If the charter is entirely silent, the former alternative must prevail — but we think that a careful scanning of the words of the charter will show that the latter is more consistent with *297 the expressions of legislative will. When the valuation has been made by the jury, the land is to vest in the company, “so soon as the valuation thereof may be paid or tendered and refused.'" This valuation cannot be construed to include costs, and yet if costs were to be recoverable, there is no reason why the payment of them, as well as of the valuation, should not precede the perfection of the title in the company. Again, in the case where the company is required to give bond, it was certainly not looked on with favor, for it was vexing the Court by its appeal from the commissioners; the security required from it would, one might reasonably suppose, be extended to every thing which finally it would be bound to pay: interest from the time of assessment is therefore imposed as a kind of penalty for the delay it occasions, if the assessment should be sustained (meaning, probably, if a less sum should . not be found): — yet the condition of this bond is for payment “of said valuation and interest,” no mention being made of costs.
The appeal from Commissioners to the Court is more like to the appeal from the Ordinary to the Common Pleas, than to any thing else known in our legislation or practice. The first instance of it found in our statutes is in the charter of the South-Carolina C. and R. R. Company granted in 1828, (8 Stat. 359,) from which the 10th section of the charter of the Greenville and Columbia R. R. Company has been copied almost verbatim. In 1828 .all lawyers in the State were accustomed to' the exclusion of costs in cases of appeals from the Ordinary, and would naturally have brought the appeal there provided from commissioners to the Court under the same rule. In favor of the latter the judgment of the Court following the verdict, and the recovery of damages, might have suggested a difference, to a patient inquirer : but opposed to them, were the expressions indicative of legislative' intention. The hardship of a party entitled to compensation carrying on at his own expense a litigation against a company that resisted a just demand, would have pressed upon his attention : but it would have been met by considerations of equal injustice and inexpediency that would often result from *298 the general rule that -would allow costs for any recovery of damages, A discretion entrusted to the Court, or any legislative regulation, he would have sought for in vain. He must have concluded that what had long been thought proper in the appeal from the Ordinary, was intended to apply to this new appeal. The construction which was proper for the charter of 1828, must be extended to that of 1845 : for the intermediate provision concerning costs made for the appeals from the Ordinary, makes only more significant the silence on the subject in the latter charter.
We conclude that the whole proceeding by appointment of commissioners and trial upon appeal from them to the Court, was intended as a speedy, cheap, and irregular mode of ascertaining the quantum of compensation, and that recovery of costs was not intended to follow the ascertainment.
The motion is granted: and it is ordered that the costs be struck out of the judgment and execution.
FROST, Withers and Glover, JJ., concurred.
O’Neall and Whitner, JJ., President and a Director of the Company, gave no opinion.

Motion granted.